[No. F019909. Fifth Dist. Aug. 26, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID SILVA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1.

COUNSEL

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Garnand Venturi and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

BISSIG, J.*—Appellant, David Silva, was convicted by a jury of one count of spousal abuse (Pen. Code,[1] § 273.5) and four counts of spousal rape (§ 262), all committed on October 2, 1991, and a second count of spousal abuse committed on October 10, 1992. In a bifurcated proceeding, the court found true an allegation he had previously been convicted of a serious felony (assault with a deadly weapon) within the meaning of section 667, subdivision (a). The court sentenced him to an aggregate term of 19 years in state prison and ordered him to pay a restitution fine of $1,900 (Gov. Code, § 13967).

On appeal, appellant contends the trial court committed various sentencing errors: (1) it used his prior conviction both to enhance his sentence and to impose the aggravated term; (2) it abused its discretion in imposing consecutive sentences; and (3) it ordered him to pay a restitution fine without considering his ability to pay. In addition, he contends section 273.5,

---

*Judge of the Kings Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All future statutory references are to the Penal Code unless otherwise indicated.

which criminalizes abuse of a spouse or cohabitant of the opposite sex, violates the equal protection clause because it does not also apply to abuse of a cohabitant of the same sex. We will affirm the judgment.

## FACTS

Appellant and C. S. started seeing one another in the summer of 1992 and soon moved in together at his parents' home in Fresno. They married in September not long after learning C. was pregnant.

The relationship was marked by violence almost from its inception. The first serious incident occurred on August 2, 1992, after C. spent the night at a friend's house. Angry she had not come home, appellant drove to the house, dragged C. to his car, and took her to a park where he repeatedly threatened to kill her. Back at their own house later that morning, appellant hit C. in the face and shredded her clothes with a razor blade. She moved out to live with appellant's sister but returned after about a week. Other such incidents followed, particularly when appellant had been drinking. He usually apologized afterward and promised not to hit C. anymore, but the problem continued.

On October 2, 1992, C. and appellant went to dinner at his sister's house, where appellant drank some beer and "did a little bit of coke." They returned home about 3 a.m. the following morning after stopping along the way to buy more drugs. Back at the house, appellant demanded sex. C. refused and tried to push him away, but appellant pulled off her clothes and forcibly penetrated her. She did not want to have intercourse because her doctor had warned her it might endanger her pregnancy.

Appellant left the room but soon returned and began questioning C. about attentions paid her by other men. As the argument escalated, he straddled her on the bed and began hitting her in the head and arms. Her screams soon attracted the notice of his parents who banged on the door and threatened to call police. In response, appellant dragged C. out of the house and down the street to the home of his friend Eddie Hossel six or seven blocks away. Hossel was not home but his mother gave them permission to sleep in the back yard. By that point, C. had a large lump on her head, her eyes were "going shut," and she could barely walk, but appellant refused her requests for medical attention. It was then about 4 or 5 a.m.

C. lay down on a small mattress in the back yard. Once again appellant demanded sex and C. refused, but he pulled down her pants and put his penis in her vagina. The same thing happened a third time about five minutes later,

and a fourth time after the couple walked back to their house about 6 or 7 a.m. C. was unable to go to work later that day because her eyes were black and blue and she was unable to move her arms.

The final incident occurred on the morning of October 10. Appellant had gone out the night before and returned about 8 a.m. He appeared to be drunk. He demanded C.'s money and began rummaging through her things when she refused to turn it over. She ran to the living room where he caught her and began hitting her with his fists. She ran into the bathroom and threw up. He followed and continued hitting her in the head, stomach, chest, and shoulders. When he hit her under her left eye, "blood went everywhere" and the attack ceased. Appellant then left the house with his brother.

In the meantime, appellant's father called police. They arrived about 8:45 a.m. followed shortly by paramedics who took C. to Fresno Community Hospital where she was treated for her injuries. These included bruises and swelling on her face, arms, and wrists; a laceration under her left eye; a possible fractured jaw; and vaginal bleeding. C. also had two black eyes and bruises on her arms which appeared to be about a week old. She was released from the hospital that evening.

### Defense

Appellant's mother and two of his sisters testified they had not seen or heard any fights between appellant and C. during the time they were together; had never seen C. with any injuries (other than some attributed to another man in August); and had never received any complaints from her about her treatment by appellant.

### DISCUSSION

1. *Sentencing Issues.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Equal Protection.*

 ██ ██ Appellant was convicted in counts 1 and 6 of spousal abuse in violation of section 273.5 which provides in part: "(a) Any person who willfully inflicts upon his or her spouse, or any person who willfully inflicts

---

\*See footnote, *ante* page 1160.

upon any person of the opposite sex with whom he or she is cohabiting,[6] . . . corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for 2, 3 or 4 years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both."

■ Appellant contends the statute unconstitutionally discriminates against someone like himself who assaults a person (spouse or cohabitant) of the *opposite* sex because the statute excludes from its scope someone who does the same thing to a person of the *same* sex. He acknowledges same-sex assailants may be liable under other statutes for assault or battery but argues the discrimination operates nonetheless because punishment for these other offenses is less severe, at least where the injury inflicted is relatively minor.

■ Section 273.5 applies to "corporal injury resulting in a traumatic condition." A "traumatic condition" is defined as "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (c).) Thus, a defendant who inflicts only "minor" injury violates the statute. (*People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 771 [17 Cal.Rptr.2d 743]; *People* v. *Gutierrez* (1985) 171 Cal.App.3d 944, 951-952 [217 Cal.Rptr. 616].) By contrast, felony battery requires "serious bodily injury" (§ 243, subd. (d)) and felony assault requires "force likely to produce great bodily injury"[7] (§ 245, subd. (a)). Section 273.5 requires a lesser showing of harm so officers can intervene more expeditiously in domestic disputes. (*People* v. *Gutierrez*, *supra*, 171 Cal.App.3d at p. 950.) In other words, "the Legislature has clothed persons of the opposite sex in intimate relationships with greater protection by requiring less harm to be inflicted before the offense is committed." (*Id.* at p. 952.) ■ It is this distinction which underlies appellant's equal protection claim.

The injuries which appellant inflicted on C. on October 2 and October 10 were not minor. A same-sex assailant who inflicted the identical injuries on

---

[6] "'[C]ohabiting' under section 273.5 means an unrelated man and woman living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy." (*People* v. *Holifield* (1988) 205 Cal.App.3d 993, 1000 [252 Cal.Rptr. 729]; *People* v. *Ballard* (1988) 203 Cal.App.3d 311, 317-318 [249 Cal.Rptr. 806].)

[7] "'The statute prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury. While . . . the results of an assault are often probative of the amount of force used, they cannot be conclusive.' [Citation.]" (*People* v. *Armstrong* (1992) 8 Cal.App.4th 1060, 1065 [10 Cal.Rptr.2d 839] [evidence defendant grabbed the victim's face, pinched both sides of her mouth, and shoved his hand down her throat was sufficient to support conviction].) Further, the use of hands or fists alone may be sufficient to establish a violation. (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161 [255 Cal.Rptr. 327] [defendant struck the victim one time on the side of her face, knocking her down and briefly dislocating her jaw].)

his or her live-in partner would have been liable to prosecution for felony assault and therefore subject to the same punishment as was imposed in this case. Nonetheless, we have reviewed appellant's claim on the assumption he has standing to raise it.

### A. *Judicial Scrutiny.*

■ Statutes challenged under the equal protection clause will receive differing levels of scrutiny depending upon the nature of the distinctions they establish. Legislation which creates a suspect classification or impinges on the exercise of a fundamental right is subject to strict scrutiny and will be upheld only if it is necessary to further a compelling state interest. All other legislation will satisfy constitutional requirements if it bears a rational relationship to a legitimate state purpose. (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198]; *Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601].)

■ Appellant argues section 273.5 is subject to the higher level of review because it impairs his fundamental right to liberty, referring to the right of criminal suspects to due process of law before they may be deprived of their freedom (U.S. Const., 14th Amend.) or, more generally, to the right to fair treatment within the criminal justice system. (See Nowak, Constitutional Law (2d ed. 1983) Equal Protection, ch. 16, § XI, pp. 816-821.) ■ This right incorporates a number of more specific provisions contained in the Bill of Rights, including the right to counsel, the protection against unreasonable search and seizure, the right to a jury trial, and the protection against cruel and unusual punishment. (*Ibid.*; see also 7 Witkin, Summary of Cal. Law (9th ed. 1990) Constitutional Law, § 415 et seq.) ■ Appellant does not claim and it does not appear the statute impinges on any of these particular constitutional guarantees.

In *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], our Supreme Court applied strict scrutiny to strike down on equal protection grounds a provision of the Penal Code which permitted a juvenile offender tried as an adult to be committed to the California Youth Authority for a longer term than an adult convicted of the same offense could be sentenced to prison. The court held "personal liberty is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions." (*Id.* at p. 251.) However, despite appellant's argument to the contrary, we do not believe the court thereby established the general proposition that all criminal laws, because they may result in a defendant's incarceration, are perforce subject to strict judicial scrutiny.

In *People* v. *Hernandez* (1979) 100 Cal.App.3d 637 [160 Cal.Rptr. 607], the defendant contended it violated equal protection to give greater weight to an in-state prior than to an out-of-state prior for the purposes of a section 667.5 sentence enhancement. This court found the claim involved neither a suspect classification nor a fundamental interest and therefore applied the rational basis test. We said: "This does not imply that liberty is not a fundamental interest. (*People* v. *Olivas*[, *supra*, 17 Cal.3d at pp. 250-251].) We believe that there is a qualitative difference, however, between the initial interest one has in retaining his liberty prior to sentencing and the interest one has in whether or not an enhancement applies." (100 Cal.App.3d at p. 644, fn. 2; but see *People* v. *Jacobs* (1984) 157 Cal.App.3d 797, 801 [204 Cal.Rptr. 234]; *People* v. *Williams* (1983) 140 Cal.App.3d 445, 450 [189 Cal.Rptr. 497].)

We reaffirmed this position in *People* v. *Flores* (1986) 178 Cal.App.3d 74 [223 Cal.Rptr. 465]. There a defendant convicted of attempted second degree murder asserted he had been denied equal protection because he had received the same sentence as someone convicted of attempted first degree murder. We held there was a rational basis to punish all attempted murders alike. "The decision of how long a particular term of punishment should be is left properly to the Legislature. The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed. [¶] . . . Appellant does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives. We apply the rational basis test." (*Id.* at p. 88; see also *People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1237-1238 [277 Cal.Rptr. 382].)

Likewise, appellant's equal protection challenge in this case is based on an alleged sentencing disparity. For the reasons stated in *Hernandez* and *Flores*, we should evaluate his claim under the rational basis test. This test has been described in greater detail as follows: "[T]he constitutional guarantee of equal protection of the laws . . . compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. . . . [T]he Legislature is vested with wide discretion in making the classification and . . . its decision as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. . . . Only invidious discrimination offends the equal protection clause; . . . the Legislature need not treat similar evils identically or legislate as to all phases of a field at once . . . ; legislative classification is permissible when it is based upon some distinction reasonably justifying

differentiation in treatment . . . ; a classification is not void because it does not embrace within it every other class which might be included . . . . A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . ." (*Russell* v. *Carleson* (1973) 36 Cal.App.3d 334, 343-344 [111 Cal.Rptr. 497], cited in *People* v. *Cameron* (1975) 53 Cal.App.3d 786, 795 [126 Cal.Rptr. 44], internal citations and quotation marks omitted.)

### B. *Section 273.5.*

Section 273.5 and its predecessor, section 273d, have previously been upheld against equal protection claims not unlike the one asserted here.

In *People* v. *Cameron, supra,* 53 Cal.App.3d 786, the defendant challenged section 273d, which prohibited a husband from inflicting upon his wife "corporal injury resulting in a traumatic condition."[8] He claimed the statute discriminated against husbands who assaulted their wives because the statute did not also apply to unmarried men who assaulted their paramours or to wives who assaulted their husbands.

With respect to the first distinction, we noted the state has an overriding interest in preserving the institution of marriage, particularly where children are involved. (*People* v. *Cameron, supra,* 53 Cal.App.3d at pp. 791, 793, 797.) With respect to the second, we found the Legislature might reasonably have treated assaultive husbands differently than assaultive wives because "women are physically less able to defend themselves against their husbands than vice versa" (*id.* at p. 791) and because wives are far more likely to be the victims than the perpetrators of domestic violence (*id.* at p. 796). For these reasons, we concluded the failure of section 273d to address these other aspects of the problem did not make the statute unconstitutional. (53 Cal.App.3d at p. 797.) However, we also stated: "[W]e do not wish to be understood as saying that section 273d could not with justification be made applicable to the reverse situation, namely assaults by wives upon husbands. In fact, with the modern trend of greater independence and assertiveness on the part of the female the Legislature perhaps would be well advised to give recognition to this fact." (*Ibid.*)

Perhaps in response to this suggestion, the Legislature subsequently renumbered the wife beating provisions as section 273.5 and amended the new

---

[8]Section 273d read as follows: " 'Any husband who willfully inflicts upon his wife corporal injury resulting in a traumatic condition . . . is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for not more than 10 years or in the county jail for not more than one year.' " (*People* v. *Cameron, supra,* 53 Cal.App.3d at p. 790, fn. 1.)

section to its present form by extending coverage to both spouses as well as to cohabiting partners of the opposite sex. In *People* v. *Gutierrez, supra,* 171 Cal.App.3d 944, the defendant mounted an equal protection challenge to section 273.5 on the ground it favors divorced spouses and separated partners of meretricious relationships. In holding this distinction is not unreasonable, the court noted such persons "are simply not in the constant proximity to each other as are married spouses and cohabiting couples" and therefore do not face the same risk of domestic violence. (171 Cal.App.3d at pp. 949, 950.) It concluded the Legislature was entitled to grant special protection to the marital relationship, and "was similarly free to add to the protected list the less committed but still significantly volatile cohabiting relationship, without adding in all other variations on those themes." (*Id.* at p. 951.)

Although the particular classification under review here is different, the controlling principle enunciated in *Cameron* and *Gutierrez* applies equally to appellant's claim. ▮ "The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].) "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 486-487 [25 L.Ed.2d 491, 503, 90 S.Ct. 1153].)

▮ As we noted in *Cameron,* "wives as an object of abuse by their spouses are a class distinctly set apart by the conditions under which their abuse customarily occurs. The first and most obvious distinction is that women are physically less able to defend themselves against their husbands than vice versa." (*People* v. *Cameron, supra,* 53 Cal.App.3d at p. 791.) Of course, the same physical disparities exist in nonmarital opposite-sex relationships. Moreover, women in opposite-sex relationships unquestionably make up the largest single category of domestic abuse victims. In turn, women in increasing numbers have invoked the use of deadly force to escape abusive relationships. (See *Legal Responses to Domestic Violence* (1993) 106 Harv. L.Rev. 1498, 1574-1597.) Faced with this situation, it would not have been unreasonable for the Legislature, in enacting section 273.5, to conclude that men and women in opposite-sex relationships—whether married or simply cohabiting—face a particular risk of domestic violence. ▮ "A legislature may address a problem 'one step at a time,' or even 'select one phase of one field and apply a remedy there, neglecting the others.' [Citation.] So long as its judgments are rational, and not invidious, the legislature's efforts . . . are not subject to a constitutional straitjacket. The very

complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them." (*Jefferson* v. *Hackney* (1972) 406 U.S. 535, 546-547 [32 L.Ed.2d 285, 296, 92 S.Ct. 1724], cited in *Russell* v. *Carleson, supra*, 36 Cal.App.3d at p. 344.)

This is not to minimize the problem of violence within same-sex relationships, nor to suggest that persons in such relationships are undeserving of protection similar to that afforded by section 273.5. On the contrary, "[w]hether married or not, cohabiting partners are in the high risk category for domestic violence." (*People* v. *Gutierrez, supra*, 171 Cal.App.3d at p. 950.) However, the mere omission to deal with domestic violence in same-sex relationships cannot be seen as rendering section 273.5 so irrational or invidiously discriminatory as to warrant judicial interference, and we do not find it to be unconstitutional. (*People* v. *Cameron, supra*, 53 Cal.App.3d at p. 792.)

### DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Dibiaso, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 17, 1994.