[No. H014026. Sixth Dist. Apr. 25, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
DAT TAN NGUYEN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A. through C. and E. through J.

**COUNSEL**

Manuel J. Baglanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MIHARA, J.**—Defendant was convicted of petty theft with a prior (Pen. Code, § 666), and allegations that he had suffered two prior serious or violent felony convictions within the meaning of Penal Code section 667, subdivisions (b) to (i) were found true. He was committed to state prison for an indeterminate term of 25 years to life. On appeal, he asserts that (1) CALJIC No. 2.90 is inadequate because it does not define "abiding conviction," (2) the trial court prejudicially erred in giving CALJIC No. 17.42, (3) the trial court abused its discretion by refusing to reduce the conviction to a misdemeanor, (4) he must be sentenced under Penal Code section 666 rather than Penal Code section 667, subdivisions (b) to (i), (5) his prior convictions did not qualify for treatment under Penal Code section 667, subdivisions (b) to (i) because these convictions were suffered prior to the enactment of that statute, (6) Penal Code section 667, subdivisions (b) to (i) was not in effect at the time of his offense because this statute was not proper urgency legislation, (7) the evidence was insufficient to prove that one of his prior convictions was for a serious felony, (8) the restriction in Penal Code section 667, subdivisions (b) to (i) on conduct credits violates equal protection, (9) a remand is required because the trial court mistakenly believed that it had no discretion to strike one or both of the prior conviction allegations and (10) his punishment is cruel or unusual. We remand for the limited purpose of giving the trial court the opportunity to exercise its discretion under Penal Code section 1385. We do not reach defendant's cruel or unusual punishment argument due to the remand. However, we reject the remainder of defendant's contentions.

### Facts

At 6:15 p.m. on October 27, 1994, undercover security officers at a Safeway store in Sunnyvale saw defendant shoplift a large quantity of film and toiletries. Defendant was with another man. The two men conversed, and the other man went away with a cart. Defendant took eight packages of razor blades from the store shelf and placed them in his basket. The other man returned with a large quantity of film in his cart covered by some magazines. Film and toiletries are frequently stolen items because they are small and expensive. Defendant removed the items from his basket and the

film from the other man's cart and placed these objects inside his shirt. In all, defendant concealed 12 packages of film, 8 packages of razors and a package of "Vicks Nyquil" in his shirt. These items had a total value of $182.79. The two men left the cart and the basket and proceeded to the store exit. They did not pay for the items. Two store security officers followed defendant and his compatriot out of the store. Defendant's compatriot saw the security officers and said something to defendant. Defendant "started running." One of the security officers chased and caught defendant. The other security officer detained defendant's compatriot, who had not run. Defendant admitted taking the items and stated that he had done so to "pay for a room" and food. Defendant's compatriot looked "a bit malnourished," but defendant was clean and "looks like he eats well." The only money defendant had in his possession was 16 cents. He also had a pager.

Defendant was charged by information with a single count of petty theft with a prior conviction (Pen. Code,[1] § 666).[2] It was further alleged that he had suffered prior serious felony convictions for voluntary manslaughter (§ 192, subd. (a)) in 1988 and burglary of an inhabited dwelling (§§ 459, 460, subd. (a)) in 1994. Defendant testified on his own behalf at his jury trial. He asserted that he had recently met his compatriot, Hoang Tran, in a card room "when we were playing card[s]."[3] As defendant had no "place to stay," Tran let defendant stay in a room where several other men were smoking narcotics. Defendant did not like the smell in the room, so he asked Tran to take him somewhere else. Tran took him to the Safeway store in Sunnyvale. Tran told defendant to "do whatever I tell you to do, then we can get some money to rent the room and to buy some food to eat." Defendant claimed that he was hungry and tired and "my clothes were very dirty," so he did whatever Tran told him so that he could get some food. Tran would not let him take any food from the Safeway store. Defendant claimed that he had expressed his reluctance to steal to Tran, but Tran had told him "don't worry." Tran told defendant to tell the security officers that he did not know Tran, and defendant complied. Defendant admitted that he had suffered prior convictions for voluntary manslaughter, petty theft and first degree burglary. However, he claimed that the prior petty theft and burglary were "the same situation" as this offense; "I was trapped into it by friends."

The trial court instructed the jury that "[i]n your deliberations do not discuss or consider the subject of penalty or punishment. That subject must not in any way affect your verdict." The jury was also instructed on the definition of reasonable doubt with the standard revised version of CALJIC

---

[1]Subsequent statutory references are to the Penal Code unless otherwise specified.

[2]Defendant's prior petty theft conviction was for an offense committed in 1993.

[3]Later in his testimony defendant denied that he had played cards.

No. 2.90. Jury deliberations lasted less than an hour. The jury returned a verdict of guilt on the petty theft count, and it brought back true findings on both of the prior conviction allegations. The court committed defendant to state prison for an indeterminate term of 25 years to life. Defendant filed a timely notice of appeal.

DISCUSSION

A.-C.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### D. *Defendant Is Not Entitled to Be Punished Under Section 666 Instead of Section 667*

Defendant claims that he must be punished under section 666 instead of section 667, subdivisions (b) to (i). He presents four separate arguments in support of this assertion. We reject them.

#### 1. *Violation of Section 666 Is a Felony*

Defendant claims that a person who violates section 666 does not "commit a felony" but only commits "a misdemeanor with enhanced punishment" and therefore does not come within the meaning of section 667, subdivisions (b) to (i). We disagree.

"A felony is a crime which is *punishable* with death or by imprisonment in the state prison." (§ 17, subd. (a), italics added.) "When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes" only when a punishment other than state prison is imposed or the offense is designated or charged as a misdemeanor or determined or declared to be a misdemeanor. (§ 17, subd. (b).) Defendant relies heavily on the fact that section 666 is a "sentence-enhancing statute" rather than a "substantive offense statute." (*People* v. *Coronado* (1995) 12 Cal.4th 145, 152, fn. 5 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) We find this fact irrelevant as to this issue. Section 17 makes clear that it is the *potential punishment* for an offense which determines whether the offense is a felony or a misdemeanor. As section 666 is the statute which specifies the punishment for defendant's offense, it is the statute to which we must look in order to determine whether defendant's crime is a felony or a misdemeanor. In this case, it is easy to see that defendant's offense is a felony under section 17, subdivision (a) because

---

*See footnote, *ante*, page 705.

section 666 provides that defendant's offense is "punishable . . . by imprisonment in the state prison" and none of the circumstances set forth in section 17, subdivision (b) apply here. We reject defendant's claim that his offense was not a felony.

### 2. The 'Special Over General' Rule Is Inapplicable

■  Defendant argues that section 666 is a "special statute" which controls over section 667, subdivisions (b) to (i), a "general statute." As the Attorney General points out, a similar argument was rejected by the California Supreme Court in *People* v. *Coronado, supra,* 12 Cal.4th 145, 153. Coronado had received a state prison term for driving under the influence because he had three prior convictions for driving under the influence. The state prison term was authorized by Vehicle Code section 23175, which, like section 666, is a sentence-enhancing statute and not a substantive offense statute. (*Coronado,* at p. 152, fn. 5.) A one-year prison prior enhancement (§ 667.5, subd. (b)) was attached to Coronado's state prison term as a consequence of the fact that one of his three prior driving under the influence convictions had been a felony and had resulted in a state prison term. (*Coronado,* at p. 149.) Coronado claimed on appeal that section 667.5, subdivision (b) was inapplicable because Vehicle Code section 23175 was a "special statute" which controlled over the more "general statute" section 667.5, subdivision (b). (*Coronado,* at p. 153.) The California Supreme Court soundly rejected this assertion. Its reasoning is pertinent here.

"The 'special over the general' rule, which generally applies where two *substantive* offenses compete, has also been applied in the context of enhancement statutes. . . . The rule does not apply, however, unless 'each element of the "general" statute corresponds to an element on the face of the "specific" [*sic*] statute' or 'it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute.' . . . [¶] Do the elements of section 667.5(b) correspond to the elements of Vehicle Code section 23175? Clearly not. Among other things, punishment may be imposed under section 667.5(b) only where the defendant has been previously convicted of a felony and has served a prison term therefor. In contrast, felony punishment is permissible under Vehicle Code section 23175 even where the defendant has never been convicted of a felony and has never served a term in state prison. In addition, Vehicle Code section 23175 limits its application to prior convictions involving certain specified drunk driving offenses, while section 667.5(b) applies generally to any felony conviction that resulted in a prison term. [¶] Would a conviction resulting in the application of the felony punishment provisions of Vehicle Code section 23175 'necessarily or commonly' result

in the application of the enhancement provisions of section 667.5(b)? Again, the answer is no. Even though both statutes provide for punishment where prior convictions are involved, misdemeanor convictions may often serve to trigger felony punishment under Vehicle Code section 23175 but, by definition, could never trigger application of section 667.5(b). . . . Moreover, even though a felony drunk driving conviction . . . may also elevate a current offense to a felony under Vehicle Code section 23175, it is not necessarily or commonly the case that the qualifying felony conviction will have resulted in a state prison term. For example, a trial court may, in granting probation, suspend execution of a sentence for a first or second felony conviction under Vehicle Code section 23153. . . . Accordingly, a conviction resulting in the application of Vehicle Code section 23175's felony punishment provisions would not necessarily or commonly result in the imposition of a section 667.5(b) enhancement. The 'special over general' rule has no application here." (*People* v. *Coronado, supra*, 12 Cal.4th at pp. 153-155, citations and fn. omitted.)

As in *Coronado*, the elements necessary for application of section 667, subdivisions (b) to (i) do not correspond to the elements necessary for application of section 666. Section 667, subdivisions (b) to (i) are applicable to defendants who have suffered *any* prior *serious or violent felony* convictions. It does not limit its application to theft-related crimes. In contrast, section 666 is applicable even to defendants who have no prior *felony* convictions, let alone serious or violent felony convictions, but its scope is limited to defendants who have suffered prior *theft-related* convictions. A violation of section 666 also will not "necessarily or commonly result in a violation of" section 667, subdivisions (b) to (i). (*People* v. *Coronado, supra*, 12 Cal.4th at p. 154.) A recidivist petty thief, the target of section 666, will never violate section 667, subdivisions (b) to (i) because petty theft is not a serious or violent felony even when it is a felony. Defendant's argument cannot survive the application of the California Supreme Court's reasoning in *Coronado*. The "special over general" rule is not applicable here.

### 3. *Equal Protection*

Defendant claims that he must be sentenced under section 666 rather than section 667, subdivisions (b) to (i) since subjecting persons with two prior serious felony convictions, at least one of which is a conviction for a theft-related offense, to punishment under section 667, subdivisions (b) to (i) for a petty theft offense violates equal protection because persons with two prior serious felony convictions which do not include any convictions for theft-related offenses are subject only to misdemeanor punishment for a petty theft offense. We conclude that a compelling justification supports this distinction.

The challenged classification arises from the combined application of two penal statutes. Section 667, subdivisions (b) to (i) applies only to an offender whose current offense is a felony. (§ 667, subds. (c), (e).) Petty theft may be treated as a felony only if it is committed by a person who has suffered a prior conviction for a theft-related offense and has served a period of confinement therefor. (§§ 484, 486, 488, 490, 666.) Hence, a petty thief who has two prior serious felony convictions, including or in addition to a prior theft-related conviction which resulted in confinement, is subject to punishment under section 667, subdivisions (b) to (i) and may receive a term of twenty-five years to life, but a petty thief who has two prior serious felony convictions but no prior theft-related convictions is subject only to misdemeanor punishment. This is the classification that defendant attacks. He argues that the distinction between these two groups of offenders does not justify the difference in the punishment which follows from their commission of the same current petty theft offense.

" ' "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) It is often stated that "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* at p. 530.) The use of the term "similarly situated" in this context refers only to the fact that " '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' . . ." (*In re Roger S.* (1977) 19 Cal.3d 921, 934 [141 Cal.Rptr. 298, 569 P.2d 1286], citation omitted.) There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The "similarly situated" prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.

This "prerequisite" showing is met here. The Legislature expressly stated the purpose of section 667, subdivisions (b) to (i) in the statute. "It is the intent of the Legislature . . . to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously

convicted of serious and/or violent felony offenses." (§ 667, subd. (b).) Clearly, the Legislature intended to enhance the punishment of individuals who had a history of serious felony offenses and had not been deterred from continuing to commit felony offenses. While it is clear that section 667, subdivisions (b) to (i) are aimed at offenders who have committed a current *felony*, it would be, as we have explained above, circular to assert that this distinction establishes that the two groups of petty thieves herein in question are not "similarly situated." Each member of both of the groups has two prior serious felony convictions and a current petty theft conviction. While the classification of the current offense as a felony or misdemeanor differs based on distinctions in the criminal background of the two groups, it is this distinction which is challenged as not justified by the purpose of section 667, subdivisions (b) to (i). In our view, these two groups are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.

The next step in analyzing an equal protection challenge is a determination of the appropriate standard of review. In this case, the California Supreme Court has dictated that the appropriate standard of review for a distinction of this kind is strict scrutiny. This standard was established by a unanimous California Supreme Court in *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]. It is well accepted that strict scrutiny review is applied only where the classification is "suspect" or affects a "fundamental interest." (*Olivas*, at p. 243.) The defendant in *Olivas* did not claim that the challenged classification itself was "suspect," but only that it involved a fundamental interest. (*Olivas*, at p. 244.) The California Supreme Court analyzed the issue solely from a "fundamental interest" standpoint. "[W]e must initially define just what 'interest' is involved in the present case. Once that determination is made we must next decide whether that 'interest' is 'fundamental' for purposes of equal protection analysis. We must finally apply the appropriate standard of review to the legislative classification to see if it passes constitutional muster." (*Olivas*, at p. 244.)

*Olivas* struck down a classification which subjected misdemeanor offenders between the ages of 18 and 21 to significantly "extended incarceration" beyond that applicable to misdemeanor offenders over the age of 21 who had committed the same offense. The challenged classification arose from the fact that individuals in the younger group of offenders could be committed to the California Youth Authority where they could be incarcerated for several years, but individuals in the older group of offenders could not be incarcerated for more than six months in jail. (*People* v. *Olivas*, *supra*, 17 Cal.3d at pp. 241-242.) The California Supreme Court held that the appropriate standard of review was strict scrutiny because the challenged classification affected a fundamental interest—the right to liberty.

First, the court explored the nature of the interest affected by the classification. It held that the classification in question affected the defendant's "personal liberty interest" because incarceration in an institution was a "deprivation of liberty." (*People* v. *Olivas, supra,* 17 Cal.3d at p. 245.) Second, it considered whether an individual's "personal liberty interest" was "fundamental" under the California Constitution and the United States Constitution. (*Olivas,* at p. 246.) Distinguishing a number of cases from other state and federal courts that had held that personal liberty was *not* the kind of "fundamental interest" that would justify strict scrutiny equal protection review (*Olivas,* at pp. 247-248), the California Supreme Court took the position that personal liberty was indeed fundamental. The court supported this determination by noting, among other things, that society's concern about procedures that may result in the *deprivation of a person's liberty* was the main foundation for the concept of due process itself. (*Olivas,* at p. 249.) The court specifically noted that the California Constitution "manifests an even stronger concern for unwarranted deprivations of personal liberty by the state than can be found in the due process clause of the Fourteenth Amendment, itself a strong protection against unwarranted deprivations of liberty." (*Olivas,* at p. 250.) In finding that the classification in question affected a fundamental interest and therefore merited strict scrutiny review, the court expressly discredited the notion that an *initial* deprivation of liberty was fundamental but a *"continuing"* deprivation was not fundamental. "We believe that those charters are no less vigilant in protecting against continuing deprivations of liberty than are their due process clauses in protecting against the initial deprivation of that liberty. We conclude that personal liberty is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions." (*Olivas,* at p. 251.)

Having selected the appropriate standard of review, the court proceeded to apply the strict scrutiny standard to the challenged classification. "[O]nce it is determined that the classification scheme affects a fundamental interest or right the burden shifts; thereafter *the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose. [Citations.] Having determined that personal liberty is an interest which is entitled to the same protection as other fundamental interests, we confront the central issue before us: can the challenged sentencing scheme withstand application of the strict scrutiny standard?" (*People* v. *Olivas, supra,* 17 Cal.3d at p. 251.) The court concluded that the challenged sentencing scheme "has not been justified by a showing that it is necessary to achieve a compelling state interest" (*Olivas,* at p. 257) and struck it down. (*Olivas,* at pp. 251-252.) However, it did not do so lightly. "[I]t is not our function to

substitute our own judgment for the preference already expressed by the Legislature simply because we have struck a different balance on the basis of the evidence before us. But our determination in the present case is not based on a choice between two equally proper alternatives; it is compelled by the mandates of equal protection and preservation of a fundamental interest." (*Olivas*, at pp. 254-255.)

The classification challenged by defendant, like the classification challenged in *Olivas*, affects a fundamental interest. The challenged distinction subjects some petty thieves to life sentences and others to no more than six months in jail. Like the two groups of offenders in *Olivas*, these two groups of offenders have committed the same offense. While it may be tempting to try to distinguish *Olivas* on the ground that it involved an age-based classification, the California Supreme Court explicitly stated that its decision that strict scrutiny applied was not based on the classification itself being suspect but solely on the fact that the classification affected a fundamental interest. That same interest is affected by the classification in question here. One group of offenders faces a significantly extended period of incarceration, a life sentence, while the other group faces no more than six months in jail. As in *Olivas*, the personal liberty interest of the individual offender facing an extended period of incarceration is significantly affected by this classification. We can find no substantial basis for distinguishing the *interest* at issue in *Olivas* from the *interest* at issue here.[6]

Nevertheless, we believe that the classification challenged by defendant is necessitated by a compelling state interest. While the members of both groups of offenders have two prior serious felony convictions, only the members of defendant's group, who are subject to the harsher punishment, have previously been convicted of a theft-related offense and served a term of confinement for that offense. This group of individuals with a history of committing theft-related offenses can be further divided into two subgroups. One subgroup consists of individuals who not only have two prior serious

---

[6]Our obligation to follow the decisions of the California Supreme Court leaves us with no power to apply a different standard of review. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) *Olivas* has never been criticized or overruled by the California Supreme Court. However, the Courts of Appeal have repeatedly criticized and distinguished *Olivas* on a variety of grounds. The primary attack on *Olivas* has been that it is simply inconceivable that the California Supreme Court intended to subject to strict scrutiny review all criminal classifications which treat two groups of similarly situated offenders differently with respect to the length of the period of incarceration. (See *People* v. *Bell* (1996) 45 Cal.App.4th 1030, 1047 [53 Cal.Rptr.2d 156]; *People* v. *Silva* (1994) 27 Cal.App.4th 1160, 1167 [33 Cal.Rptr.2d 181]; *People* v. *Davis* (1979) 92 Cal.App.3d 250, 258 [154 Cal.Rptr. 817].) While in some appellate cases *Olivas* can be distinguished because the two groups of offenders have committed different offenses and therefore are not similarly situated, this is not so here.

felony convictions but also have an *additional* prior conviction for a serious or nonserious theft-related offense. The other subgroup consists of individuals who have two prior serious felony convictions *including* at least one prior theft-related serious felony conviction. Defendant actually belongs to both of these subgroups. His current petty theft offense was charged as a section 666 offense based on his prior *petty theft conviction*. In addition, one of his two prior serious felony convictions was for the theft-related offense of burglary.

Individuals who commit petty theft and have a history of committing theft-related offenses are significantly distinct from those individuals who have no such history. As to each subgroup, there is a compelling justification for treating the individual members of the subgroup more harshly than individuals who have never before committed a theft-related offense. The justification for treating members of the first subgroup more harshly than individuals who have committed two prior serious felony offenses but have never before committed a theft-related offense is apparent. An individual who is a member of this subgroup has suffered *three* prior convictions including two serious felony convictions and a prior theft-related conviction which was serious enough to result in service of a period of confinement. In contrast, an individual who is a member of the group to which we must compare these thrice convicted subgroup members has only suffered *two* prior convictions and has never before been convicted of a theft-related offense. The commission of theft by a thrice convicted individual with not only a history of serious felony misconduct but also of committing theft and being confined therefor poses a much more serious danger to the community than the commission of theft by an twice convicted individual with a history of serious felony misconduct who has never before committed theft. As he or she has suffered *more* prior convictions, the thrice convicted individual has had *more opportunities* to reform his or her conduct. Notwithstanding these additional opportunities to conform his or her conduct to society's rules, the thrice convicted individual has chosen a life of crime. The previous *confinement* of this individual for his or her prior theft-related offense also failed to prevent this individual from again committing a theft-related offense. As the thrice convicted individual has shown himself or herself to be resistant to confinement and committed to a life of crime, this individual poses a substantially greater danger to the community than the twice convicted individual who has never before committed a theft-related offense. The state has a compelling interest in eliminating this danger to society which necessitates harsher punishment for such individuals.

The justification for treating members of the second subgroup more harshly than individuals who have never before committed a theft-related

offense is not as apparent, but it is equally compelling. The fact that an individual who is a member of *this* subgroup has a history of serious criminal misconduct *and* previously committed a *serious or violent theft-related* offense which was found serious enough to justify a period of confinement supports a finding that this individual's commission of a new theft offense poses a much greater threat to society than the commission of a new theft offense by an individual who has a history of serious criminal misconduct but has never committed a theft-related offense. A criminal history which reflects that an individual's prior theft-related offense was a violent or serious offense demonstrates that there is a *connection* between this individual's commission of theft crimes and his or her serious or violent criminal conduct. In contrast, an individual who has suffered prior serious or violent felony convictions but has never previously engaged in such conduct *in association with a theft-related crime* has not yet demonstrated *any connection* between his or her thievery and his or her serious criminal conduct.

The commission of a new theft offense by an individual *with* a history which connects theft-related crimes with serious or violent criminal conduct is a much more serious event and poses a much greater threat to society than the commission of a petty theft offense by an individual whose criminal history does not disclose such a connection. In the absence of this connection, an individual's commission of petty theft does not reflect a continuation of his or her pattern of serious misconduct. The state has a strong and compelling interest in protecting its citizens from the harm associated with serious or violent criminal conduct. An individual who has previously been convicted of and incarcerated for committing a serious theft-related offense and has not been deterred from committing a new theft crime can only be deterred from this course of serious misconduct by harsh punishment. As the state has a compelling interest which necessitates the challenged distinction, the classification does not violate equal protection.

### 4. *Section 667, Subdivisions (b) to (i) Is Not Ambiguous*

Defendant contends that it is at least "ambiguous" whether Penal Code section 667, subdivisions (b) to (i) apply to petty theft offenses, so this ambiguity should be resolved in defendant's favor. Section 667, subdivisions (b) to (i) unambiguously apply to an individual convicted of a felony who has one or more prior serious or violent felony convictions. An individual who commits a petty theft offense which is a felony because of his or her prior theft-related conviction and who also has one or more prior serious or violent felony convictions is clearly within the scope of section 667, subdivisions (b) to (i). We can find no ambiguity whatsoever to which to apply defendant's assertions. Thus, we reject them.

E.-J.*

. . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The judgment is vacated and this matter is remanded to the trial court for the limited purpose of allowing the trial court to decide whether it would have exercised its discretion to dismiss one or both of the prior conviction allegations if it had understood that it had such discretion. If the trial court decides that it would not have dismissed either of the allegations, it shall reinstate the judgment. If the court decides that it would have dismissed one or both of the allegations, it shall do so and then resentence defendant accordingly. "If, on remand, the trial court . . . decides to exercise its discretion to strike [one or both of] the prior felony conviction allegations in furtherance of justice . . . , the court must set forth the reasons for that decision in strict compliance with section 1385(a). Any such decision will be reviewable for abuse of discretion according to the procedures generally applicable to such decisions." (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 532 [53 Cal.Rptr.2d 789, 917 P.2d 628].)

Cottle, P. J., concurred.

**BAMATTRE-MANOUKIAN, J.,** Concurring.—I concur in the majority opinion. I am not convinced, however, that *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375] requires application of the strict scrutiny standard here solely on the basis that a criminal defendant is facing incarceration. (*People* v. *Silva* (1994) 27 Cal.App.4th 1160, 1167 [33 Cal.Rptr.2d 181].) I understand *Olivas* to establish only that persons convicted of the same crime and otherwise similarly situated should not be punished differently absent a compelling state interest. Equal protection does not require equal treatment of convicts with different criminal histories. (*People* v. *Spears* (1995) 40 Cal.App.4th 1683, 1687-1688 [48 Cal.Rptr.2d 634]; *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 827-383 [51 Cal.Rptr.2d 106].) Strict scrutiny is not implicated simply because the Legislature has provided for the potential incarceration of future lawbreakers by defining a crime and distinguishing degrees of culpability. (*People* v. *Mitchell* (1994) 30 Cal.App.4th 783, 795-796 [36 Cal.Rptr.2d 150]; *People* v. *Bell* (1996) 45 Cal.App.4th 1030, 1049 [53 Cal.Rptr.2d 156]; *People* v. *Davis* (1979) 92 Cal.App.3d 250, 258 [154 Cal.Rptr. 817].) In view of these recent cases which question how broadly *Olivas* applies, I would respectfully invite the California Supreme Court to provide guidance on this issue.

*See footnote, *ante*, page 705.

Even if I assume that the higher standard of strict scrutiny applies here, I would agree with the majority that the state interest in distinguishing between these two groups is compelling. More severe treatment is appropriate for criminals who repeat theft-type crimes after prior conviction and punishment. I also believe it is rational for the Legislature to have made this distinction.

A petition for a rehearing was denied May 20, 1997, and appellant's petition for review by the Supreme Court was denied August 20, 1997. Mosk, J., was of the opinion that the petition should be granted.