Filed 1/20/21  P. v. Martinez CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN MARTINEZ,<br><br>    Defendant and Appellant. | A158265<br><br><br>(Alameda County<br>Super. Ct. No. 177780B) |

This is an appeal from a postjudgment order denying the petition of defendant Brian Martinez for resentencing pursuant to Penal Code section 1170.95 (petition).[1]  Section 1170.95, effective January 1, 2019, sets forth a procedure by which a person convicted of murder under two now invalidated theories of accomplice liability may seek to have the murder conviction vacated and to be resentenced on any remaining count.  (See Sen. Bill No. 1437 (2017–2018 Reg. Sess.) § 4 (SB 1437).)

Defendant contends the trial court misconstrued section 1170.95 when concluding that to be eligible for relief a petitioner must have been convicted of murder.  Defendant, who was charged with murder under the no longer valid theory of felony murder, entered a no contest plea to voluntary

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

manslaughter rather than face a second trial after a mistrial was declared in his first trial. According to defendant, section 1170.95 applies to petitioners, such as him, who were charged with felony murder yet entered a plea to the lesser included offense of voluntary manslaughter. Defendant thus contends the trial court erred by denying his petition for failure to state a prima facie case. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2014, Mike Owens was shot and killed in Oakland. Defendant was charged with: murder with a special-circumstance allegation of felony murder in the course of robbery, enhanced for personal use of a firearm (count 1); home invasion robbery in concert, also enhanced for personal firearm use (count 2); and possession of a firearm by a felon (count 3).[2] It was further alleged that defendant had prior convictions for assault with a deadly weapon and domestic violence causing injury.

Following a trial, the jury was unable to reach a verdict and the court declared a mistrial on all counts.

On January 29, 2018, defendant entered a no contest plea to voluntary manslaughter and the remaining charges were dismissed. Defendant was sentenced to the upper term of 11 years in state prison.

On March 5, 2019, following the passage of SB 1437, defendant filed a petition for resentencing under section 1170.95. The trial court denied the petition without an evidentiary hearing, ruling that he was not eligible for relief. This timely appeal followed.

---

[2] Codefendant Ruben Anthony Cortez was also charged with murder and robbery.

2

**DISCUSSION**

Defendant raises the following arguments on appeal: (1) section 1170.95, reasonably construed, applies to both petitioners convicted of murder under a felony-murder theory and petitioners convicted of voluntary manslaughter after taking a plea in lieu of facing trial; (2) to the extent the statutory language is ambiguous, reading section 1170.95 to apply to those who plead to voluntary manslaughter better advances the legislative intent of SB 1437, which is to ensure punishment is commensurate with the crime; (3) section 1170.95 should apply to voluntary manslaughter convictions because voluntary manslaughter is a lesser included offense of murder; (4) the rule of lenity requires the court to resolve section 1170.95's ambiguities in defendants' favor; (5) excluding those convicted of voluntary manslaughter from relief under section 1170.95 would violate the equal protection clause; and (6) the trial court's error requires reversal.

Where, as here, issues on appeal require statutory interpretation, we independently review the statute, applying well-established principles. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) Our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) " 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context . . . .' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language." (*Ibid.*) "We must take the language of [section 1170.95], as it was passed into law, and must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions." (*People v. Garcia* (1999) 21 Cal.4th 1, 14.)

If " 'the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " ' " (*People v. Cornett, supra*, 53 Cal.4th at p. 1265.)

## A.    *Overview.*

SB 1437 was passed to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lombardo* (2020) 54 Cal.App.5th 553, 555–556.)  To that end, effective January 1, 2019, SB 1437 amended sections 188 and 189 and added section 1170.95 to the Penal Code.  (*People v. Lombardo*, at pp. 555–556.)  Relevant here, section 1170.95 established a procedure by which a defendant convicted of felony murder or murder under a natural and probable consequence theory may petition to have the conviction vacated and to be resentenced on the remaining counts.  (*People v. Lombardo*, at p. 557; § 1170.95, subd. (a).)  According to defendant, section 1170.95 also provides relief to a person, such as him, who accepted a plea offer to voluntary manslaughter in lieu of facing trial for felony murder.  For reasons that follow, we disagree.

## B.    *The language of section 1170.95 is unambiguous.*

Section 1170.95, subdivision (a), states:  "*A person convicted of felony murder or murder under a natural and probable consequences theory* may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

4

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (Italics added.)

Uniformly, courts considering this language have held that the statute unambiguously authorizes only those persons convicted of murder under one of the now invalidated theories, and not those convicted of any other type of crime, to petition for resentencing. (E.g., *People v. Turner* (2020) 45 Cal.App.5th 428, 435–436 (*Turner*) ["section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter"]; *People v. Paige* (2020) 51 Cal.App.5th 194, 201 (*Paige*) [same]; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 (*Cervantes*) ["The plain language of the statute is explicit; its scope is limited to murder convictions"].)

Other subdivisions of section 1170.95 support this interpretation. Subdivision (d)(1) provides in relevant part: "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate *the murder conviction* and to recall the sentence and resentence the petitioner on any remaining counts . . . ." (Italics added.) Similarly, subdivision (d)(2) provides in relevant part: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her *murder conviction* vacated and for resentencing." (Italics added.) Thus, these subdivisions, similar to subdivision (a), "expressly limit their

5

application to murder convictions, and neither they nor any other part of the statute address granting relief from a conviction of any crime other than murder." (*Paige, supra*, 51 Cal.App.5th at p. 202.)

Arguing against our interpretation, defendant relies on one phrase in section 1170.95, subdivision (a)(2), which sets forth one of the three conditions a petitioner must meet to qualify for relief. Specifically, he or she must have "[been] convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder*." (Italics added.) Defendant argues, "Subdivision (a)(2) as worded, [*sic*] thus includes pleas to offenses other than murder, such as the manslaughter plea entered here."

We reject defendant's argument based on the reasoning of our colleagues in *Paige, supra*: "Read in isolation, section 1170.95, subdivision (a)(2) could be misinterpreted to be as expansive as [defendant] argues it is. But read in the context of the statute as a whole, considering both its structure and its language, subdivision (a)(2) cannot reasonably be understood to encompass persons who accept a plea offer in lieu of trial for a crime other than murder. The first paragraph of section 1170.95, subdivision (a) sets forth the basic 'who' and 'what' of the statute—who may seek relief and what they may seek. The 'who' is '[a] person *convicted of felony murder or murder under a natural and probable consequences theory*' and the 'what' is the opportunity to 'file a petition with the court . . . *to have the petitioner's murder conviction vacated*.' (Subd. (a), italics added.) The provision on which [defendant] relies, section 1170.95, subdivision (a)(2), is one of three conditions—*all* of which must *also* apply before the person convicted of felony murder or natural and probable consequences murder may seek relief under section 1170.95. Given the structure of the statute and the

6

language in the first paragraph of section 1170.95, subdivision (a), the reference to a person who 'accepted a plea offer' in subdivision (a)(2) must necessarily mean a person who accepted a plea to, and was convicted of, first or second degree murder in lieu of a trial at which he could have been convicted of either of those charges." (51 Cal.App.5th at p. 202; see *Turner, supra*, 45 Cal.App.5th at p. 436.)

Accordingly, based on the unambiguous language of section 1170.95, considered as a whole and without resort to external aids,[3] we hold that defendant is ineligible for resentencing because he was not convicted of murder under a theory of felony murder or the natural and probable consequences doctrine. (See *People v. Colbert* (2019) 6 Cal.5th 596, 603 [where text is unambiguous, the statute's plain meaning governs].)

---

[3] In *Turner*, the court examined in detail the legislative history of section 1170.95 after assuming merely for the sake of argument that an ambiguity exists in the statute's language. (*Turner, supra*, 45 Cal.App.5th at pp. 436–438.) From its examination, the court distilled the following points: "First, the Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory. Second, nearly every committee report and analysis made note of the life sentences imposed for defendants convicted of first or second degree murder. One report based cost estimates on the number of inmates serving terms for first or second degree murder. Finally, the petitioning procedure was *restricted* by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory. Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95." (*Id.* at p. 438.) Without rehashing our colleagues' lengthy analysis, we agree the legislative history, which includes bill analyses and reports from the Senate Appropriations Committee and Public Safety Committee (*id.* at pp. 437–438), confirms that section 1170.95 was added by SB 1437 for the purpose of limiting criminal culpability and punishment for murder.

**C.** *There is no basis for disregarding section 1170.95's plain language.*

Defendant refers us to the rule that courts should decline to ascribe the plain meaning to a statute if doing so would result in absurd consequences that the Legislature did not intend. (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856–857.) Here, however, there is no absurdity. The plain reading of section 1170.95 is wholly consistent with the legislative purpose of SB 1437, which, as stated, was to "amend the felony murder rule and the natural and probable consequences doctrine, *as it relates to murder*, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added.) This purpose does not extend to the crime of voluntary manslaughter. (See *People v. Shiga* (2019) 34 Cal.App.5th 466, 476 [" 'if the Legislature meant to define only one offense, we may not turn it into two' "].)

Moreover, "[i]nsofar as [defendant] suggests it would be absurd to interpret section 1170.95 to limit its ameliorative benefits only to defendants convicted of murder, as opposed to a broader swathe of defendants that otherwise meet its criteria, this argument is equally without merit. '[T]he gap between a defendant's culpability in aiding and abetting the target offense and the culpability ordinarily required to convict on the nontarget offense is greater in cases where the nontarget offense is murder, than where the nontarget offense' is voluntary manslaughter. [Citation.] Given this disparity, '[t]he Legislature could have reasonably concluded reform in murder cases "was more crucial or imperative." ' [Citation.]" (*People v.*

8

*Flores* (2020) 44 Cal.App.5th 985, 996–997, first and second bracketed insertions added, fn. omitted (*Flores*).)[4]

Defendant also relies on the rule of lenity, "whereby courts must resolve doubts as to the meaning of a statute in a criminal defendant's favor . . . ." (*People v. Avery* (2002) 27 Cal.4th 49, 57.) This rule likewise does not help defendant because, as we have explained, the meaning of section 1170.95 is not in doubt. (See *People v. Cornett, supra*, 53 Cal.4th at p. 1271 [" ' "[the rule of lenity] applies 'only if two reasonable interpretations of the statute stand in relative equipoise,' " ' " and " 'has no application where, "as here, a court 'can fairly discern a contrary legislative intent" ' " '].)

## D. *No Violation of Equal Protection.*

Last, we reject defendant's equal protection challenge to the trial court's ruling.

"At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288.) Accordingly, the guarantees of equal protection require that similarly situated persons receive equal protection under the law. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

---

[4] We reject for similar reasons defendant's alternative argument that section 1170.95 should apply to voluntary manslaughter because it is a lesser included offense of murder. The Legislature could have extended the scope of section 1170.95 to lesser included offenses of murder but chose not to. This choice was rational, and we decline to second-guess it. (See *Flores, supra*, 44 Cal.App.5th at p. 997; *People v. Larios* (2019) 42 Cal.App.5th 956, 970 ["there is a rational basis for the Legislature's decision to grant relief pursuant to section 1170.95 only to murder convictions . . . based on judicial economy and the financial costs associated with reopening . . . convictions"].)

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*Cooley v. Superior Court, supra*, 29 Cal.4th at p. 253.)  Thus, for purposes of equal protection " 'the threshold question is whether the legislation under attack somehow discriminates against an identifiable class of persons. [Citation.]  Only then do the courts ask the further question of whether this identifiable group is a suspect class or is being denied some fundamental interest, thus requiring the discrimination to be subjected to close scrutiny.' " (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 646.)

Here, defendant argues, "Persons who committed crimes during which an accomplice killed someone are similarly situated for purposes of culpability, regardless of whether they went to trial and were convicted under a now-invalid first-degree felony murder theory, pled to some degree of murder, or pled to voluntary manslaughter."  We disagree.

"[V]oluntary manslaughter [is] a different crime from murder, which carries a different punishment.  Normally 'offenders who commit different crimes are not similarly situated' for equal protection purposes." (*Cervantes, supra*, 44 Cal.App.5th at p. 888.)  As the Legislature noted when passing SB 1437, a person convicted of first degree murder faces a sentence of death, life without possibility of parole or 25 years to life in prison.  A person convicted of second degree murder faces a sentence of 15 years to life in prison.  (Legis. Counsel's Dig., Sen. Bill No. 1437 (2017–2018 Reg. Sess.); see § 190, subd. (a).)  On the other hand, a person, such as defendant, convicted of voluntary manslaughter faces a sentence of 3, 6 or 11 years in prison. (§ 193, subd. (a).)  It is precisely this disparity in the punishments imposed upon persons who participate in murder (but are not the actual killer) and

persons who participate in other homicides that the Legislature sought to ameliorate when enacting SB 1437.[5] (See Stats. 2018, ch. 1015, § 1, subds. (b), (e).)

Accordingly, because such persons are not similarly situated for purposes of section 1170.95, defendant's equal protection challenge is misplaced. We therefore need not address his further argument that under the strict scrutiny standard, the People must demonstrate a compelling state interest that justifies the Legislature's decision to treat persons convicted of murder differently than persons who plead to voluntary manslaughter under this legal scheme. (See *Vergara v. State of California, supra*, 246 Cal.App.4th at p. 646; see also *People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 ["an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified"].)

## DISPOSITION

The order is affirmed.

---

[5] Even assuming some similarities exist with respect to an accomplice convicted of murder under a felony-murder theory and an accomplice who accepts a plea offer to voluntary manslaughter, as the People note, equal protection does not require exact proportionality between the means that a legislature employs and the ends it seeks to achieve. (See *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887–888 [while " 'persons convicted of voluntary oral copulation . . . may have also engaged in intercourse (whether they were convicted of it or not),' " "no legal authority suggest[s] that the same registration consequences are constitutionally required because certain defendants might at times commit both offenses with the same victims"]; *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 488 [" '[A] legislature need not run the risk of losing an entire remedial scheme simply because it failed . . . to cover every evil that might conceivably have been attacked' "].)

_____

Jackson, J.


WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.


A158265/*People v. Brian Martinez*

12