Filed 4/19/13  P. v. Moats CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061408 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD233886) |
| ANTHONY ERIC MOATS, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 17, 2013, be modified as follows:

1.  On page 1, the superior court number "SCD233864" is modified to read "SCD233886."

There is no change in the judgment.

_____

BENKE, Acting P. J.

Copies to:  All parties

Filed 4/17/13  P. v. Moats CA4/1 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY ERIC MOATS,<br><br>    Defendant and Appellant. | D061408<br><br><br><br>(Super. Ct. No. SCD233864) |

APPEAL from a judgment of the Superior Court of San Diego County, Margie G. Woods, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

A jury convicted Anthony Moats of burglary (Pen. Code, § 459)[1] and possession of a forged check (§ 475, subd. (c)).  The court sentenced him to eight years in prison. On appeal, Moats contends the court erred by imposing a two-year sentence for an enhancement based on committing the current offense while out on bail on a case that was subsequently dismissed.  He also contends the statutory construction of section 4019

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

and principles of equal protection entitle him to additional presentence custody credits. We conclude the court improperly imposed an additional two-year sentence for an out-on-bail enhancement on a case that was subsequently dismissed, and remand for resentencing. We also conclude that under the rules of statutory construction, the enhanced conduct credit provision of section 4019 applies only to defendants who committed their crimes on or after October 1, 2011, and section 4019 does not violate principals of equal protection. (U.S. Const. 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) The judgment is affirmed in part, reversed in part and remanded for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 2011, Moats entered the Navy Federal Credit Union and attempted to partially cash, and partially deposit, a check written on an account in the name of Shane Brown at USAA Bank. The teller gave the check to the assistant manager, who discovered it was drawn on a closed account. The assistant manager notified the police. The police detained Moats and searched his vehicle located in the credit union's parking lot. They found a USAA bank checkbook for Shane Brown in Moats's vehicle. The USAA bank account had been set up online on December 27, 2010, using Shane Brown's personal information and a $100 transfer from another bank. Shane Brown testified at trial that he did not have an account at USAA Bank, he had never seen Moats before, and the signature on the check Moats presented to the credit union was not Brown's signature.

2

Moats was in county jail awaiting trial for the current offenses on October 1, 2011, when the 2011 amendments to section 4019 became operative.[2] (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35.) On October 21, 2011, a jury found Moats guilty of burglary and possessing a forged check. On the same day, Moats admitted to several prior convictions, and admitted he was out on bail when he committed the burglary and possession charges. At sentencing, the court dismissed a prior strike conviction allegation and two of Moats's four prior prison term allegations in the interest of justice. The court sentenced Moats to a total term of eight years in prison, and awarded him a total of 356 days of presentence custody credit, consisting of 238 days for actual days served (§ 2900.5, subd. (a)), plus 118 days of conduct credits for good behavior pursuant to section 4019, subdivision (c).

## DISCUSSION

### A. Forfeiture

Neither Moats nor the People addressed whether, by not objecting during sentencing, he forfeited his claim that the court imposed an improper two-year, out-on-bail enhancement. "Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K.* (2007) 40 Cal.4th 875, 880.) Generally, the forfeiture rule also applies in the context of sentencing; where a trial court does not make

---

[2]    Section 4019 was amended in 2011 in conjunction with the 2011 Realignment Legislation, which addressed public safety. (Stats. 2011, ch. 15, § 1; see § 1170, subd. (h).)

3

or articulate a discretionary sentencing choice, the defendant must object to preserve the issue on appeal. (*Id.* at p. 881; *People v. Scott* (1994) 9 Cal.4th 331, 351-354; *People v. Tillman* (2000) 22 Cal.4th 300, 302-303.)

However, although discretionary sentencing decisions must be challenged first in the trial court, the governing rule is that *unauthorized sentences* can be appealed despite a failure to object in the trial court. (*People v. Scott, supra*, 9 Cal.4th at p. 354.) As explained in *People v. Stowell* (2003) 31 Cal.4th 1107, 1113: "In *Scott,* the court distinguished between unauthorized sentences--those that 'could not lawfully be imposed under any circumstance[s] in the particular case' [citation]--and discretionary sentencing choices--those 'which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner.' [Citation.] As to the former, lack of objection does not foreclose review: 'We deemed appellate intervention appropriate in these cases because the errors presented "pure questions of law" [citation] and were " 'clear and correctable' independent of any factual issues presented by the record at sentencing." [Citation.] In other words, obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable.' " Applying this rule, we conclude Moats did not waive his right to appeal the out-on-bail enhancement because the two-year enhancement was an unauthorized sentence that "could not lawfully be imposed under any circumstance in the particular case." (*Scott,* at p. 354.)

Moats did, however, forfeit his claim of entitlement to additional conduct credits. At sentencing, immediately after awarding him 118 days of conduct credits, the court

4

asked Moats if he wished to be heard. His counsel did not object to the conduct credits awarded at that time. By not objecting to the award of conduct credits, Moats forfeited the right to challenge on appeal any error in the court's award. (*People v. Myers* (1999) 69 Cal.App.4th 305, 312 [defendant forfeited any claim of error in presentence credits by stipulating to amount awarded].) Nevertheless, to avert a claim of ineffective assistance of counsel, we address the merits of his statutory construction and equal protection arguments concerning the award of conduct credits. (See, e.g., *People v. Norman* (2003) 109 Cal.App.4th 221, 230 [court examined sentence to determine if cruel and unusual despite defendant's waiver of argument].)

B. Standards of Review

Moats's claim of an out-on-bail sentencing error is founded on section 12202.1, which applies to felonies committed while on bail for a prior offense. "The proper interpretation of a statute is a question of law for our independent determination. [Citations.] Likewise, the application of a statute to undisputed facts is a question of law, subject to our de novo, or independent, review on appeal." (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311.) Similarly, because Moats's claim to additional conduct credits also involves issues of statutory interpretation as well as constitutionality--pure questions of law--we apply the de novo standard of review, and this court exercises its independent judgment without deference to the trial court's ruling. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801.)

5

C.  The Trial Court's Imposition of Out-on-bail Enhancement

Moats claims the court erred by imposing a two-year, out-on-bail enhancement based on a prior case that was subsequently dismissed.  Section 12022.1, subdivision (b), provides that a "person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years" in state prison.  However, the Supreme Court held in *In re Jovan B.* (1993) 6 Cal.4th 801, 809 that "the enhancement cannot be imposed unless the defendant is ultimately 'convicted' of both offenses."  (Accord, *In re Ramey* (1999) 70 Cal.App.4th 508, 512; *People v. McClanahan* (1992) 3 Cal.4th 860, 869.)

The prior offenses for which the out-on-bail enhancement was applied were dismissed as part of a plea agreement.  The People concede that because Moats was not convicted of the prior offenses, the trial court could not impose the sentence for the out-on-bail enhancement based on those offenses.  However, the People urge this Court to remand the case to the trial court for resentencing, rather than simply staying or dismissing the two-year sentence for the enhancement.

> "[A] defendant's aggregate prison term cannot be viewed as a series of separate independent terms, but rather must be viewed as one prison term made up of interdependent components.  The invalidity of some of those components necessarily infects the entire sentence. . . . [¶] . . . [¶] . . . In making its sentencing choices in the first instance the trial court undoubtedly considered the overall prison term to be imposed and was influenced in its choices by the length of the enhancements.  When defendant successfully urged the illegality of his sentence on appeal the illegality did not relate only to a portion of the sentence but infected the whole.  On remand the trial court was entitled to reconsider its entire sentencing

6

scheme . . . ." (*People v. Savala* (1983) 147 Cal.App.3d 63, 68-70, disapproved on other grounds in *People v. Foley* (1985) 170 Cal.App.3d 1039, 1044.)

In determining the sentence to impose against him, the trial court dismissed Moats's prior strike conviction allegation and two of his four prior prison term allegations to arrive at an eight-year sentence. The court could have retained those enhancements and imposed a longer prison sentence for Moats; however, after evaluating all of the facts of the case, the trial court chose to impose only an eight-year sentence. On remand, in the interests of justice the trial court is entitled to reconsider its entire sentencing scheme, including the prior conviction allegation it dismissed, to determine the appropriate sentence for Moats. On reconsideration, the trial court may decide Moats still warrants the same eight-year sentence, as "[i]t is perfectly proper . . . for the trial [court] to reimpose the same sentence in a different manner." (*People v. Calderon* (1993) 20 Cal.App.4th 82, 88.) "However, . . . to 'preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal' [citation], appellant may not be sentenced on remand to a term in excess of his original sentence." (*People v. Burns* (1984) 158 Cal.App.3d 1178, 1184; *People v. Savala*, *supra*, 147 Cal.App.3d at pp. 67, 70).

In a footnote, Moats also contends the facts of out-on-bail offenses should have been, but were not, pleaded with the same specificity as any prior offense must be pleaded and proved. However he provides no analysis of how this failure negatively affected him. The information alleged Moats was out on bail in two previous cases when he committed the current crimes. Although the information did not reference the prior case numbers for the out-on-bail enhancements, the prosecution's trial brief, and the trial

7

court, identified the two prior cases with case numbers.  Nonetheless, based on *People v. Mancebo* (2002) 27 Cal.4th 735, in which the court addressed a similar failure to plead the factual basis of a sentencing enhancement and struck the enhancement as a result, Moats asks this court to direct that the facts of out-on-bail offenses should be pleaded with specificity.

Section 12022.1, subdivision (c), requires that an enhancement allegation be pleaded in the information or indictment.  Furthermore, " '[d]ue process requires that an accused be advised of the specific charges against him so he may adequately prepare his defense and not be taken by surprise by evidence offered at trial.' " (*People v. Mancebo, supra*, 27 Cal.4th at p. 750.)  However, Moats has not shown he suffered harm because of the lack of specifically pleading the factual basis of the sentencing enhancement.  He had adequate notice of the charges against him and, on October 21, 2011, admitted the truth of the out-on-bail enhancements.  Moats does not argue, and nothing in the record suggests, he would have defended the case any differently and not admitted the truth of the out-on-bail enhancements had the circumstances been specifically alleged.  Any error Moats suffered was harmless, especially because we have vacated the sentence imposed on the out-on-bail enhancements.

D.  Claim to Additional Conduct Credits

Moats claims that despite committing his offenses before the October 1, 2011, operative date of the amendment to section 4019, he is entitled to additional presentence conduct credits at the enhanced rate of the new version of section 4019.  Under section 4019, defendants are entitled to earn additional credit towards their sentences by

8

performing additional labor (§ 4019, subd. (b)) and for good behavior (§ 4019 subd. (c).) To differentiate from custody credits earned by actual time spent in custody, these additional credits are referred to as conduct credits. (*People v. Duff* (2010) 50 Cal.4th 787, 793.) Before October 1, 2011, persons who, like Moats, had been convicted of a serious or violent felony were entitled to two days of conduct credits for every four days actually served. (Former Pen. Code, § 4019, subd. (f); Stats. 2010, ch. 426, § 2.) However, on October 1, 2011, when Moats was in local custody awaiting sentencing, the Legislature amended section 4019 in Assembly Bill No. 109 (2011-2012 Reg. Sess.), as part of the Realignment Act. The amendment, which became operative October 1, 2011, increased the amount of conduct credits earned by prisoners in local custody to one day of conduct credit for each day spent in actual custody. (§ 4019, subd. (f); Stats. 2011, ch. 39, § 53.) As relevant here, section 4019, subdivision (h), provides:

> "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

Moats committed his offenses on April 28, 2011. At sentencing, the court applied the former version of section 4019 in effect at the time Moats *committed* his crimes. Moats contends any applicable conduct credits he accrued after the operative date of the amendment to section 4019 on October 1, 2011, should have been calculated using the more generous amended rate. He argues the award of only 118 days of conduct credits violated both the terms of section 4019 as amended and his right to equal protection.

9

1. *Statutory Construction*

Moats asserts that under the rules of statutory construction, section 4019 as amended requires the court grant one-for-one conduct credits for all time spent in local custody after October 1, 2011. He contends the second sentence of section 4019, subdivision (h), *suggests* days earned by a prisoner after October 1, 2011, must be calculated at the rate established by the new law.

The language in section 4019 subdivision (h), that "[a]ny days earned . . . prior to October 1, 2011, shall be calculated at the rate required by the prior" law, could be read to imply that any days earned by a defendant after that date should be calculated using the amended rate, regardless of the date the offense was committed. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52.) However, to do so would invalidate the immediately preceding sentence of section 4019, which *explicitly* limits the benefits of the new accrual rate to those defendants who committed their crimes after October 1, 2011. (*Rajanayagam,* at p. 52.) Moats's proffered interpretation would "defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well settled principles of statutory construction." (*Ibid.*) Interpretations that lead to absurd results or consequences the Legislature could not have intended must be avoided. (*People v. Thomas* (1992) 4 Cal.4th 206; see *People v. Tanner* (1979) 24 Cal.3d 514.)

Moreover, absent a clearly manifested intent to the contrary, there is a legal presumption that all statutes operate prospectively. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209.) Statutes ambiguous with respect to retroactive application are to be construed as prospective. (*Ibid.*; *People v. Brown* (2012) 54 Cal.4th

10

314 (*Brown*); see also *Lindh v. Murphy* (1997) 521 U.S. 320, 328, fn. 4 [statute applied retroactively only where statutory language is "so clear that it could sustain only one interpretation"].) One noted exception to the presumption of prospective application exists where the Legislature reduces the *punishment* for a particular offense. (*In re Estrada* (1965) 63 Cal.2d 740, 748.) However, section 4019 merely addresses future conduct; it does not alter the penalty for any particular crime and that exception is not applicable here. (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551; see also *Brown,* at p. 325.)

Although section 4019 could have been drafted more artfully, "the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits." (*People v. Ellis, supra,* 207 Cal.App.4th at p. 1553; see also *People v. Rajanayagam, supra,* 211 Cal.App.4th at p. 52 [§ 4019, subd. (h) merely reaffirms that defendants who committed their crimes before October 11, 2011, can still earn conduct credits, just under the prior law].) The Legislature's clear and explicit intent to apply the new custody credit formula only prospectively cannot be overridden by an implied interpretation of the second sentence in the statute. Moats's argument that statutory construction requires modification of his conduct credit award is not persuasive.

11

2.  *Equal Protection*

Moats also invokes the basic guarantees of equal protection embodied in the Fourteenth Amendment to the United States Constitution and article I, sections 11 and 21 of the California Constitution, to support his contention.  (*Hayes v. Superior Court* (1971) 6 Cal.3d 216, 223; *In re King* (1970) 3 Cal.3d 226, 232.)  Moats asserts that were section 4019 interpreted to apply only to crimes committed on or after October 1, 2011, it would violate equal protection principles.

To succeed on a claim under the equal protection clause, Moats must first show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.  (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199; see also *People v. Wilkinson* (2004) 33 Cal.4th 821, 836-837; *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571.)  For purposes of section 4019, there are two classes of incarcerated inmates: (1) those in jail on or after October 1, 2011, having committed a crime on or after October 1, 2011; and (2) those in jail on or after October 1, having *committed the same offense before* October 1, 2011.

The primary purpose of awarding conduct credits is to reward those defendants who perform additional work and behave, and to act as a threat to withhold conduct credits from those who would otherwise misbehave.  Indeed, the "very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment."  (*People v. Lara* (2012) 54 Cal.4th 896, 906.)

Moats contends that because inmates from both groups have committed the same crime, are in custody at the same time, and are earning conduct credits for the same

12

positive behavior, they are similarly, if not identically situated. However, as the Supreme Court noted, "prisoners who served time before the incentives took effect . . . could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown, supra*, 54 Cal.4th at pp. 328-329 [examining applicability of retroactivity to § 4019]; see also *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-397.) Although *Brown* examined whether section 4019 should be applied retroactively to all prisoners, the logic is nonetheless applicable here.

Additionally, even were we to hold that both groups have a similar incentive to work and behave, we do not believe both groups have the same inducement. Although the type of incentive--additional conduct credits--may be the same between the groups, the amount of that incentive is not the same. Those prisoners who commit crimes and serve time after the incentives take effect have a greater incentive to alter their behavior than those who committed crimes before the later-enacted incentive. Thus, contrary to Moats's claims, the two groups are not similarly situated and as a result, any analysis of his equal protection claims does not proceed to the next step of the level of review.

Although we need not decide the appropriate level of review, we believe rational basis review is the proper level of scrutiny. In considering whether state legislation violates equal protection, " 'we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification [affecting similarly situated individuals] must be rationally related to a legitimate governmental purpose. [Citations.] Classifications . . . affecting fundamental rights . . . are given the most exacting

13

scrutiny.' " (*People v. Wilkinson, supra,* 33 Cal.4th at p. 836; see also *Manduley v. Superior Court, supra,* 27 Cal.4th at p. 571.) When a statutory classification infringes on either a fundamental interest or right, the law or policy must be justified by a compelling interest and the distinctions drawn by the law must be necessary to further this interest. (*People v. Olivas* (1976) 17 Cal.3d 236, 251.) In all other instances, rational basis review is the default level of review; the state is only required to make a showing that "the legislative classification bears a rational relation to some independent and legitimate legislative end." (*Romer v. Evans* (1996) 517 U.S. 620, 621.)

There is no fundamental interest at stake with regard to conduct credits. The argument could be made that to limit a prisoner's opportunity to earn conduct credits is to increase punishment, because it "substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.' " (*Weaver v. Graham* (1981) 450 U.S. 24, 33). After all, "a person who is released a day early is punished a day less." (*People v. Lara, supra,* 54 Cal.4th at pp. 905-906.) As Moats notes in his reply brief, courts have in the past reached different conclusions as to the applicable test for incongruities resulting from statutes involving time credits. (See, e.g., *People v. Austin* (1981) 30 Cal.3d 155, 166 [compelling interest]; *People v. Sage* (1980) 26 Cal.3d 498, 508; *People v. Caruso* (1984) 161 Cal.App.3d 13, 17-18; *People v. Jacobs* (1984) 157 Cal.App.3d 797, 801; *In re Kapperman* (1974) 11 Cal.3d 542, 544-546 [rational relationship]; *People v. Silva* (1994) 27 Cal.App.4th 1160, 1168; *People v. King* (1992) 3 Cal.App.4th 882, 885.) However, those cases holding there is a compelling interest no longer stand for the proposition Moats claims. As our Supreme Court held,

14

the cases they relied on should not be so broadly read as to require strict scrutiny "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes." (*People v. Wilkinson, supra,* 33 Cal.4th at p. 837.) Since those cases were decided, the Supreme Court has since favorably cited *In re Bender* (1983) 149 Cal.App.3d 380 for the proposition that " 'punishment-lessening statutes given prospective application do not violate equal protection.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 189.)

Personal liberty is not at stake in cases of conduct credits because "section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown, supra,* 54 Cal.4th at p. 325.) The proper test for issues concerning conduct credits is rational basis review.

Assuming the state had adopted a classification that affected two or more similarly situated groups in an unequal manner, the next step would be to determine whether those classifications bear a rational relationship to a legitimate state purpose. The rational relationship test is highly deferential. (*People v. Turnage* (2012) 55 Cal.4th 62, 77 ["[a] classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends' "].) Under the rational relationship test, a statutory classification is constitutionally sound if there are any reasonably conceivable facts that could provide a rational basis for the classification. (*People v. Hofsheier, supra,* 37 Cal.4th at p. 1200.)

15

Moats argues that because the purpose of both the Realignment Act and the amendment to section 4019 was to address the state's fiscal emergency by more cost-effectively managing prison populations, the arbitrary date of October 1, 2011, has no legitimate or rational public purpose. However, all changes, additions or deletions to the code must have a beginning date. Equal protection of the law "does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between rights of an earlier and later time." (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505; see also *People v. Floyd, supra,* 31 Cal.4th at p. 188 ["[d]efendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the [operative] date of a statute lessening the punishment for a particular offense"].)

The stated goal of the Legislature is achieved by the amendment, as the fiscal crisis is ameliorated to a degree by awarding additional conduct credits to those prisoners who committed their crimes on or after October 1, 2011. Although awarding enhanced credits retroactively would have produced greater cost savings, the Legislature did not choose this approach. Nonetheless, the approach the Legislature did choose bears a rational relationship to cost savings.

> "[T]he Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. To reward appellant with the enhanced credits of the 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be

16

punished in accordance with the sanctions and given the rewards
(conduct credits) in effect at the time an offense was committed."
(*People v. Kennedy, supra,* 209 Cal.App.4th at p. 399.)

Although the amendment to section 4019 may result in the two classifications obtaining different conduct credit totals, under the rational relationship test, the Legislature is permitted to "experiment individually with various therapeutic programs related to criminal charges or convictions" (*In re Huffman* (1986) 42 Cal.3d 552, 561), so as "to control the risk of new legislation by limiting its application" (*People v. Lynch* (2012) 209 Cal.App.4th 353, 361) and determine what works and what does not. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 649 [reform measures can be implemented one step at a time].) Because the deferential nature of the rational basis test does not afford us the power to second guess the Legislature and determine the most effective manner to achieve that legitimate state interest, we hold the classifications established in section 4019 bear a rational relationship to a legitimate state interest.

## DISPOSITION

The judgment is affirmed in part, reversed in part and remanded for resentencing.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

17