Filed 10/31/13   P. v. Enriquez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047553 |
| v. | (Super. Ct. No. 11NF3038) |
| SANDRA ENRIQUEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge. Affirmed as modified with directions.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Melissa Mandel and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Sandra Enriquez of residential burglary (Pen. Code, § 459; all statutory citations are to the Penal Code unless noted). Enriquez contends the trial court imposed an unconstitutional probation condition by requiring her to maintain a residence approved by her probation officer. She also argues she is entitled to additional presentence custody and conduct credits. For the reasons expressed below, we strike the probation condition and direct the trial court to amend its sentencing minute order to correct custody and conduct credits. As modified, the judgment is affirmed.

I

FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2011, around 4:30 a.m., Staci Taylor awoke after hearing "thumping down the stairs" and saw a woman, whom she later identified as Enriquez, leaning on the stairs leading to the loft in Taylor's Anaheim hotel room. Taylor heard clicking and saw Enriquez trying to remove an iPod from its case. Taylor asked what she was doing, and Enriquez responded "my friend wouldn't let me in" and gave other nonsensical answers during their conversation, which lasted a minute or two. Enriquez appeared under the influence of drugs.

Taylor walked to the phone, told Enriquez she was calling the front desk, and Enriquez left the room. Taylor noticed someone had removed a screen from a window next to the stairway. Taylor's mother-in-law, asleep in the loft, later noticed someone had opened her nightstand drawer, taken her house slippers, rifled through her purse, and took cash from her wallet totaling around $500.

Police officers found Enriquez a few hours later in another room with two men. She appeared to be under the influence, and admitted she had been drinking and

2

smoking marijuana. Enriquez denied going into Taylor's room, but admitted knocking on a door in Taylor's building looking for a misplaced business card, but left when she discovered the room was occupied.

Investigators did not locate the stolen money or slippers. Taylor found the iPod, which Taylor's daughter left charging in the kitchen when she went to bed, on the stairway where Taylor spotted Enriquez.

Enriquez testified and denied committing the burglary, claiming she was in her room or the hotel Jacuzzi at the time of the crime. Following trial in August 2012, the jury convicted Enriquez of first degree burglary. In October 2012, the trial court suspended imposition of sentence and placed Enriquez on probation on various terms and conditions. The court awarded her 187 days of actual presentence custody credit, plus 92 days of conduct (§ 4019) credit.[1]

## II

### DISCUSSION

A. *The Trial Court Erred by Requiring Probation Officer Approval of Defendant's Residence*

Enriquez contends the trial court erred by requiring as a condition of probation that she "maintain a residence as approved by [her] probation, mandatory supervision officer." We agree.

Section 1203.1, subdivision (a), authorizes the court to place a defendant on probation "upon those terms and conditions as it shall determine." The discretion to determine proper terms and conditions has limits, however. (*People v. Garcia* (1993) 19 Cal.App.4th 97, 101.) "[A] condition of probation which requires or forbids conduct

---

[1]     Enriquez pleaded guilty before trial to an unrelated misdemeanor violation of receiving stolen property (§ 496).

3

which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486.) "[E]ven if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 380.)

Enriquez did not object to the probation condition at the sentencing hearing. The forfeiture rule bars a defendant from raising an appellate challenge to a probation condition when the defendant failed to object on that ground in the trial court. (*People v. Welch* (1993) 5 Cal.4th 228, 234-238; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 882 ["an adult probationer who elects to receive probation in lieu of incarceration fairly may be charged with the need to timely challenge any conditions imposed and that application of the forfeiture doctrine would deter the promulgation of invalid conditions in the trial court and decrease the number of appeals contesting such conditions"].) But a defendant may raise on appeal, without having objected in the trial court, an appellate claim amounting to a "facial challenge" based on a constitutional defect that does not require scrutiny of individual facts and circumstances.

A probation condition that imposes limitations "on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K., supra,* 40 Cal.4th at p. 890.) A "court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359 [probation condition forbidding defendant from

associating with all persons designated by her probation officer was "overbroad and permit[ted] an unconstitutional infringement on defendant's right of association"].)

In *People v. Bauer* (1989) 211 Cal.App.3d 937, the defendant was convicted of false imprisonment and assault. As a probation condition, the trial court required the defendant to "obtain her probation officer's approval of her residence. . . ." (*Ibid.*) The court in *Bauer* concluded the condition was unconstitutionally overbroad because it unnecessarily limited the defendant's associational rights. (*Ibid.;* see also *People v. Burden* (1988) 205 Cal.App.3d 1277, 1280 [restriction on the defendant's constitutional right to employment was overbroad]; cf. *People v. Olguin* (2008) 45 Cal.4th 375, 380 [court upheld probation condition requiring the defendant to keep probation officer *informed* of place of residence, cohabitants and pets, and *notify* probation within 24 hours of any changes].)

The requirement that Enriquez obtain probation officer approval of her residence is similarly overbroad. It impedes her rights to travel and freely associate, and delegates too much discretionary control to the probation officer without providing a standard to which the probation officer must adhere. Under the imposed probation condition, the probation officer could prohibit a defendant from living with any person, including an elderly parent or future spouse who has no association with the offense committed and no criminal record. Indeed, as Enriquez suggests, a probation officer could disapprove of a residence that is inconvenient to visit. Of course, probation officers strive to act reasonably, but as phrased, the probation condition here presents the possibility of abuse because the condition is not narrowly tailored to the government's interests of rehabilitation and protection of the public.

There is nothing in the record to show the nature of Enriquez's residence contributed to her crimes or related to her future criminality. At the time of the crimes, Enriquez and her three-year-old daughter resided in Buena Park with her parents and a sibling. Her parents had previously confronted her about her drug use and she told them she would stop and had agreed to attend Narcotics Anonymous meetings, although she continued to use drugs. We note the unchallenged conditions of the probation order require Enriquez to use no unauthorized drugs, to submit to drug testing, to submit herself and property to search and seizure at any time without warrant or reasonable cause, and to cooperate with the probation officer in any plan for psychological and drug treatment. Other unchallenged conditions bar her from associating with persons known by her to be parolees or probationers, convicted felons, drug sellers or users, or persons otherwise disapproved of by the probation officer. These conditions adequately address the state's interest in rehabilitation and protection of the public without unduly burdening Enriquez's constitutional right to freedom of association.

For these reasons, we will modify the probation order to strike the condition requiring Enriquez to obtain approval of her residence from her probation officer. Although the court did not impose one, a condition requiring Enriquez to notify the probation officer of any change in residence would be appropriate, and the trial court may choose to add such a condition (see § 1203.1, subd. (j); § 1203.3).

B.    *The Court Erred in Calculating Custody Credits*

As a condition of probation, the trial court ordered Enriquez to serve 279 days in jail with credit for time served, comprised of 187 actual days in custody between the date of her arrest and the sentencing hearing, and 92 days of section 4019 work and conduct credits.

6

Enriquez argues the court erred in crediting her with 187 actual custody days. She states the probation officer correctly calculated she spent 188 days in custody as of October 12, 2012, and the court should have added seven days because the sentencing hearing occurred on October 19, 2012. The Attorney General states Enriquez "appears to be correct . . . assuming the probation officer's information . . . was accurate . . . ."

The trial court's minutes reflect Buena Park police served Enriquez's arrest warrant on October 22, 2011. Enriquez posted a bail bond on November 21, 2011. The court forfeited the bond on February 8, 2012 and Enriquez was back in custody on February 14, 2012. She posted a new bond on May 18, 2012. On August 14, 2012, the court forfeited the second bond and took Enriquez into custody, where she remained until sentencing on October 19, 2012.

Based on the above dates, it appears Enriquez spent 193 days in custody. But because our calculation might contain erroneous assumptions and the Attorney General concedes the additional two days, we will accept the Attorney General's concession of 195 actual days. Enriquez is also entitled to additional conduct credits.[2]

C.   *Amended Section 4019 Does Not Apply to Crimes Committed Before October 1, 2011*

Enriquez also asserts she is entitled to additional section 4019 credits for presentence custody she served with good conduct after October 1, 2011. She interprets amended section 4019 to require a bifurcated calculation for conduct credits earned before and after October 1, 2011, if the crime was committed before that date. (See *People v. Brown* (2012) 54 Cal.4th 314, 322 (*Brown*).)

_____

[2]   Because she has already served her time, the issue of credits presumably only affects a future sentence should Enriquez violate probation.

7

Whether section 4019 applies to crimes committed before October 1, 2011, is not new. In *People v. Rajanayagam* (2012) 211 Cal.App.4th 42 (*Rajanayagam*), a panel of this court rejected the defendant's contention section 4019 created a bifurcated calculation for crimes committed before October 1, 2011, and we see no reason to depart from that decision. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 52; see *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553 (*Ellis*) [noting "Legislature's clear intent" to have enhanced rate apply only to those defendants who committed their crimes on or after October 1, 2011].)

Enriquez argues *Ellis* and *Rajanayagam* misinterpreted the statute, explaining "that in the first clause, 'prospectively' is *referring to defendants who are already in custody for previous crimes* [i.e., crimes committed before October 1, 2011]. *They* are the only defendants about whom there could be *ex post facto* issues and to whom there could be question as to whether the statute applies prospectively; thus it is logical that the Legislature would clarify how the law applied to them. After all, defendants in custody for crimes committed on or after the effective date of the statute *could only ever be subject to the new version of the statute*; prospective application is a *non sequitur* for such offenders. Yet, the Legislature specifically applied the changes *both* to new defendants *and* prospectively, i.e., to those in custody at the time of the statute's effective date."

Enriquez also states § 4019(h)'s second sentence supports her argument: "'Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.' [Citation.] If the statute was not intended to apply 'prospectively' to defendants in custody at the time of the effective date, there would be no reason to clarify the rate at which the days they had *already earned* were to be

8

calculated, because that rate *would not change*." She describes as "unconvincing" *Rajanayagam*'s explanation the second sentence, while "inartful," merely clarified that persons confined for crimes occurring before October 1, 2011 "still have the opportunity to earn conduct credits, just under prior law." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 52.) Enriquez states "there is no suggestion in the statute that anything about the amendments would have *eliminated* conduct credits for those already in custody."

We are not persuaded. To apply the new conduct credits to defendants who committed their crimes before October 1, 2011, would ignore section 4019(h)'s plain wording that "[t]he changes to this section . . . shall apply *to prisoners who are confined* to a . . . jail . . . *for a crime committed on or after October 1, 2011*." (Italics added.) A necessary corollary of this express directive is that it does not apply to crimes committed before October 1, 2011. We fail to see how "prospectively" applying new credits would apply to crimes committed before the statute's effective date. We agree with the Attorney General use of "prospectively" in this context "indicat[es] even more emphatically [the Legislature's] intent that the new custody credits formula be applied only to defendants who commit crimes on or after October 1, 2011," presumably as a response to disagreements in the Court of Appeal concerning the retroactivity of prior changes to section 4019. Because Enriquez was not confined in jail for a crime committed on or after October 1, 2011, the changes in section 4019 do not apply to her. Her conduct credits are to be calculated at the rate required by the prior law. Additionally, the rule of lenity does not apply where, as here, the result would be inconsistent with the Legislature's intent. (*People v. Cruz* (1996) 13 Cal.4th 764, 783.)

D.  *Amended Section 4019's Prospective Application Does Not Violate Equal Protection*

Enriquez asserts our reading violates her constitutional right to equal protection. In *Rajanayagam*, this court rejected a similar claim, explaining, "It is undisputed the purpose of section 4019's conduct credits generally is to affect inmates' behavior by providing them with incentives to work and behave. (*Brown, supra,* 54 Cal.4th at pp. 327-329.) "But that was not the purpose of Assembly Bill No. 109, which was part of the Realignment Act. . . . [T]he Legislature's stated purpose for the Realignment Act 'is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' [Citation.] Section 17.5, subdivision (a)(7), puts it succinctly: 'The purpose of justice reinvestment is to manage and allocate criminal justice populations more *cost-effectively,* generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable.' (Italics added.)" (*Rajanayagam, supra,* 211 Cal.App.4th at pp. 54-55.) *Rajanayagam* applied the rational basis test and determined the October 1, 2011, amendment to section 4019, awarding fewer credits to defendants who committed offenses before October 1, 2011, bore "a rational relationship to the Legislature's legitimate state purpose of reducing costs." (*Rajanayagam, supra,* 211 Cal.App.4th at p. 55 citing *People v. Turnage* (2012) 55 Cal.4th 62, 77 ["'[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends"'].)" (*Rajanayagam, supra,* 211 Cal.App.4th at p. 55.)

Relying on *People v. Olivas* (1976) 17 Cal.3d 236 (*Olivas*), Enriquez argues we should apply the strict scrutiny level of review "because the fundamental interest of personal liberty is impacted by the distinction" treating less favorably persons who committed their crimes before October 1, 2011. In *Olivas*, a defendant who was 19 years of age at the time of his arrest was convicted of misdemeanor assault and committed to the Youth Authority (CYA). The Supreme Court held Welfare and Institutions Code section 1770 unconstitutional to the extent it authorized CYA to maintain control over the defendant in excess of the maximum jail term permitted by statute for a person over age 21. The court held the right to personal liberty is a fundamental interest protected under federal and state equal protection clauses (*Olivas, supra,* 17 Cal.3d at p. 251), a classification subject to the strict scrutiny standard of judicial review under which the state must establish a compelling interest justifying the distinctions drawn by the law are necessary to further that interest. The high court concluded neither the state's interest in rehabilitating youthful offenders, nor any other conceivable interest, constituted a compelling interest. (*Id.* at p. 245, 251.)

Enriquez has misinterpreted the scope of *Olivas*'s holding. "California courts have never accepted the general proposition that 'all criminal laws, because they may result in a defendant's incarceration, are perforce subject to strict judicial scrutiny.'" (*People v. Owens* (1997) 59 Cal.App.4th 798, 802; *People v. Silva* (1994) 27 Cal.App.4th 1160, 1167.) A broad reading of *Olivas* would "intrude[ ] too heavily on the police power and the Legislature's prerogative to set criminal justice policy." (*People v. Bell* (1996) 45 Cal.App.4th 1030, 1049.) "[W]here the classification scheme adopted by a statute has only an incidental or marginal effect on 'fundamental' rights, application of

11

the 'rational relationship' test is the appropriate analytical standard." (*In re Flodihn* (1979) 25 Cal.3d 561, 568.)

*People v. Floyd* (2003) 31 Cal.4th 179 is instructive. There, the defendant complained that prospectively applying the more lenient provisions of Proposition 36, which placed certain drug offenders on probation if they completed an appropriate drug treatment program, violated his right to equal protection because he was convicted of a drug offense before Proposition 36 became effective. In rejecting his argument that no compelling state interest justified the disparate treatment, the Supreme Court observed: "Defendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense. Numerous courts, however, have rejected such a claim – including this court." (*Id.* at p. 188.) Because the same reasoning applies here, we reject Enriquez's invitation to employ a strict scrutiny test in evaluating her claim. Calculating Enriquez's conduct credits under former section 4019, rather than under the October 1, 2011, amendment, did not violate her equal protection rights.

III

DISPOSITION

The condition of probation requiring Enriquez to maintain a residence as approved by her probation officer is stricken (§ 1260). The trial court is directed to amend its October 19, 2012 sentencing minute order to delete the condition, and to award

Enriquez 195 days of actual custody credit and 96 days of conduct credit.  In all other respects, the judgment is affirmed.

ARONSON, J.

WE CONCUR:

MOORE, ACTING P. J.

THOMPSON, J.