Filed 6/21/21  P. v. Taituave CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B305271 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA081157) |
| v. | |
| MIKE TAITUAVE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Mike Taituave was convicted by a jury of conspiracy to commit murder (Pen. Code, § 182, subd. (a)(1)),[1] five counts of attempted murder (§§ 664, 187, subd. (a)), and five counts of assault with a firearm (§ 245, subd. (a)(2)). The jury found true gang allegations on all counts (§ 186.22, subd. (b)(1)(C)). The jury found all five attempted murders to be willful, deliberate, and premeditated. However, the jury did not find to be true the firearm (§ 12022.53, subds.(b), (c) & (d)) and great bodily injury (§ 12022.7, subd. (a)) enhancements.

Appellant was sentenced to a term of 90 years to life in state prison. The sentence was composed of six consecutive 15-years-to-life terms on the conspiracy and the five attempted murder counts. The sentences on the assault counts were stayed pursuant to section 654. (*People v. Taituave et al.* (May 15, 2012, B225435) [nonpub. opn.] (*Taituave*).

Taituave appealed. The judgment was affirmed in *Taituave, supra,* B225435, with the exception that the sentence on the conspiracy to commit murder count was stayed under section 654, reducing his sentence to 75-years-to-life imprisonment. Appellant also received an additional 71 days of custody credit. (*Taituave, supra*, B225435.) The court corrected

---

[1] The actual verdict form for this count is missing from the clerk's transcript but the form for the enhancements for this count is at page 24. There is no dispute about the conviction for this count.

Statutory references are to the Penal Code.

the stayed sentence on the murder conspiracy count to a term of 25 years to life. (*Ibid*.)[2]

Appellant filed a petition for resentencing under section 1170.95 on January 29, 2020. The superior court denied the petition summarily on February 5, 2020, without appointing counsel. The court gave as the reason for its denial that the "petitioner was NOT convicted of murder. This defendant was the shooter and was convicted of attempted murder." Appellant filed a timely notice of appeal. We deem this appeal to be from an order after judgment affecting substantial rights. (§ 1237, subd. (b).)

We conclude that appellant was not eligible for resentencing because he was not convicted of murder but only of attempted murder. Our conclusion is based on the plain text of subdivision (a)(2) and (3) of section 1170.95, which requires the applicant for resentencing to have been convicted of first or second degree murder. Because the fact of appellant's conviction for attempted murder disqualifies him for relief as a matter of law, the superior court was empowered to conclude that appellant had not made a prima facie showing that he fell within the provisions of section 1170.95.[3] Accordingly, we affirm the order denying appellant relief under section 1170.95.

Appellant also contends that his conviction for attempted murder must be reversed because under Senate Bill No. 1437

---

[2] The trial court had erred as a matter of law in imposing a 15-years-to-life term.

[3] "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).)

3

(2017-2018 Reg. Sess.) (SB 1437) a conviction for attempted murder cannot be based on a natural and probable consequences theory. In addition, he contends that because he could have been convicted on a natural and probable consequences theory, he was entitled to a full hearing on his section 1170.95 petition. We explain below why we decline to address these two contentions.

## FACTS

Appellant and respondent both rely on the summary of the facts set forth in *Taituave, supra*, B225435. Since the facts showing the commission of the multiple felonies are not material for the purposes of our decision, save to confirm that appellant was convicted of five attempted murders, we confine ourselves to an abbreviated statement of the operative facts.

The crimes at bar were the result of yet another conflict between two criminal street gangs. Appellant and two confederates were members of the Sons of Samoa (SOS) and the victims were affiliated in one way or another with the West Side Piru gang. The victims were four members of the Ho-Ching family, father Hoching (Joe), mother Maria, daughter Sheila, son Daniel, and Sheila's cousin Faasooso Tautolo. (*Taituave, supra*, B225435.) The shootings, which were foreshadowed by SOS's violent aggressions against the Ho-Ching family residence, occurred when Joe,[4] accompanied by his wife, daughter, and Tautolo, went driving, looking worriedly for Daniel who himself was driving a car in the vicinity of the Ho-Ching residence. Appellant waylaid the car driven by Joe from between two parked cars, firing into the vehicle and hitting Joe and his wife multiple

---

[4] We use first names for clarity's sake and not out of disrespect.

4

times; both required surgery and hospitalization. (*Ibid.*) Sheila and Tautolo were in the backseat, got down on the floor, and were not hit. Daniel, who happened to be following Joe at this point, was the target of three or four shots fired by appellant, with the shots hitting the car but not Daniel. (*Ibid.*)

In rejecting the claim that the evidence was insufficient to show that appellant was the shooter, the court in *Taituave, supra*, B225435, found that, in one way or another, Joe, Maria Sheila, and Daniel all identified appellant as the shooter. (*Ibid.*) Ample physical evidence (guns, ammunition, cell phone usage) corroborated the eyewitness identification of appellant. (*Ibid.*)

## DISCUSSION

### I. THE PLAIN MEANING OF SECTION 1170.95 EXCLUDES ATTEMPTED MURDER FROM ITS COVERAGE

Section 1170.95 provides in relevant part: "(a) A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder

5

because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1), (2) & (3).)

Two out of the three conditions for resentencing under section 1170.95 state explicitly that the petitioner must have been convicted of first or second degree murder. (§ 1170.95, subd. (a)(2) & (3).)

"Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

Given that the Legislature knows that there is such a crime as attempted murder, the plain meaning of subdivision (a)(2) and (3) of section 1170.95 is that these provisions are limited to first and second degree murder and do not include attempted murder. It is manifest that if the Legislature had intended to include attempted murder in subdivision (a)(2) and (3) of section 1170.95, it certainly would have done so simply by listing it in addition to first and second degree murder.

The plain meaning of these provisions is buttressed by the fact that subdivision (a)(2) and (3) do not simply refer to "murder" but to first and second degree murder. If the reference would be only to "murder," the argument could be made that all forms of murder were intended to be included. But that is not what the Legislature did. Under the principle *expressio unius est exclusio*

*alterius,* the expression of one thing is the exclusion of another.**⁵** First and second degree murder are specifically listed, which means that other forms of homicide are excluded. This comports with the plain meaning of the statute.

The court in *People v. Flores* (2020) 44 Cal.App.5th 985 reached the same conclusion when it came to a conviction for manslaughter. The applicant had been convicted of manslaughter pursuant to a plea agreement. (*Id.* at p. 990.) Citing subdivision (a)(2) of section 1170.95, the applicant contended that she had accepted a plea offer in lieu of a trial at which she could have been convicted for first or second degree murder. (*Flores, supra,* at p. 994.) The court rejected her argument, holding that "[h]ad the Legislature intended to make section 1170.95 available to defendants convicted of manslaughter, it easily could have done so" and that the "absence of any reference to manslaughter implies the omission was intentional." (*Flores, supra*, at p. 993.) The applicant was found to be statutorily ineligible because manslaughter is not listed in section 1170.95, subd. (a). (*Flores, supra*, at pp. 990, 993, 997.)

*People v. Cervantes* (2020) 44 Cal.App.5th 884**⁶** also concluded that a manslaughter conviction did not qualify the applicant for resentencing under section 1170.95, holding that the "decision not to include manslaughter in section 1170.95 falls within the Legislature's 'line-drawing' authority as a rational

---

**⁵** For an application of this interpretative canon, see *United Farm Workers of America v. Agricultural Labor Relations Bd.* (1995) 41 Cal.App.4th 303, 316.

**⁶** Requests for depublication were denied in both *People v. Flores, supra,* 44 Cal.App.5th 985, and *People v. Cervantes, supra,* 44 Cal.App.5th 884.

choice that is not constitutionally prohibited" (*Cervantes, supra,* at p. 888), rejecting, as we do below, an equal protection challenge to section 1170.95.

We do not stop with the plain meaning of subdivision (a)(2) and (3) of section 1170.95. We go on to inquire whether these provisions are in conflict with companion legislation which were amendments to sections 188 and 189. As we discuss below, SB 1437 enacted sections 188 and 189. "But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian, supra*, 45 Cal.3d at p. 735.)

The question therefore is whether the plain meaning of section 1170.95, in requiring the petitioner to have been convicted of first or second degree murder, is consistent with recent amendments to sections 188 ("Malice, express malice, and implied malice defined") and 189 ("Murder; degrees"). We turn to this next.

## II. THE PLAIN TEXT OF SECTION 1170.95 IS NOT IN CONFLICT WITH THE AMENDMENTS TO SECTIONS 188 AND 189

In 2018, SB 1437 added subdivision (a)(3) to section 188, which states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

SB 1437 also added subdivisions (e) and (f) to section 189. Subdivision (e) creates three exceptions to the rule against the imputation of malice. They are if the defendant is the actual killer, when the defendant, with the intent to kill, aided in the commission of murder in the first degree, and when the defendant is a major participant in the underlying felony and acted with reckless indifference to human life. Subdivision (f) provides that imputation of malice is permissible if the victim is a peace officer.

As we have had the occasion to recently observe in *People v. Love* (2020) 55 Cal.App.5th 273, 283–284, review granted December 16, 2020, S265445, the amendments to section 188 and 189 have had the effect of abrogating vicarious liability in the form of the natural and probable consequences theory in cases of murder. We will from time to time refer to this as the "no imputation of malice" rule. The question is whether vicarious liability has been abrogated for attempted murder as well.

The reviewing courts are of differing views on this subject, although the majority view appears to be that the abrogation of vicarious liability by SB 1437 does not apply to attempted murder. (*People v. Munoz* (2019) 39 Cal.App.5th 738, 753, review granted Nov. 26, 2019, S258234 [SB 1437 does not apply to attempted murder]; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103, review granted Nov. 13, 2019, S258175 [does not apply]; *People v. Dennis* (2020) 47 Cal.App.5th 838, 844–847, review granted July 29, 2020, S262184 [does not apply]; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983 [does not apply]; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222–225 [does not apply]; *People v. Love, supra,* 55 Cal.App.5th at p. 291, rev.gr. [does not apply]; *People v.*

*Medrano* (2019) 42 Cal.App.5th 1001, 1015–1016, review granted Mar. 11, 2020, S259948 [does apply]; *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642–644, review granted June10, 2020, S261768 [does apply].)

Even though the reviewing courts are currently divided on whether the "no imputation of malice" rule applies to attempted murder, this controversy should have no impact on whether resentencing is limited to first and second degree murder. This is so because the concept of vicarious liability in attempted murder is a question independent of the plain meaning of subdivision (a)(2) and (3) of section 1170.95. There is no symbiotic, reciprocal relationship between vicarious liability in attempted murder, on the one hand, and the limitation of resentencing to first and second degree murder by section 1170.95, on the other. These concepts operate independently of each other. That is, whether attempted murder should or should not be divested of vicarious liability has no impact on what the plain language of section 1170.95 currently provides.

Even if we assume for the purposes of discussion that the "no imputation of malice" rule is applied to attempted murder, we see no inconsistency in limiting resentencing to first and second degree murder. It is perfectly conceivable that attempted murder is divested of vicarious liability and *resentencing* is limited to first and second degree murder. We discuss this is as a rational legislative choice in the next section where we reject the claim that failure to include attempted murder in section 1170.95 is a violation of equal protection.

10

Section 1170.95 is very much a part of the changes wrought by SB 1437.[7]  Yet section 1170.95 limits resentencing to persons convicted of first and second degree murder.  It is hard to escape the conclusion that the decision to limit resentencing to first and second degree murder was deliberate and made with full knowledge of the circumstance that malice can be a factor in other contexts as well, such as in attempted murder and voluntary manslaughter.

### III.  RESTRICTING RESENTENCING TO PERSONS CONVICTED OF FIRST AND SECOND DEGREE MURDER DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE

Appellant contends that applying SB 1437 to first and second degree murder but not to attempted murder violates the equal protection clause.  We conclude to the contrary.

The federal and California Constitutions guarantee that no person shall be denied the equal protection of the laws.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)  Equal protection of the laws means that similarly situated persons shall be treated in like manner unless there is a sufficiently good reason to treat them differently.  (*People v. Morales* (2016) 63 Cal.4th 399, 408; *Engquist v. Oregon Dept. of Agriculture et al.* (2008) 553 U.S. 591, 602; see *People v. Chatman* (2018) 4 Cal.5th 277, 287 ["our precedent has not distinguished the state and federal guarantees of equal protection for claims arising from allegedly unequal consequences associated with different types of criminal offenses"]; *Johnson v. Department of Justice* (2015) 60 Cal.4th

---

[7] SB 1437 also added section 1170.95.  (*People v. Alaybue, supra,* 51 Cal.App.5th at p. 213.)

11

871, 881 [federal and state equal protection guarantees have similar interpretation].)

The first step in addressing an equal protection claim is to determine whether there are two groups of persons who are similarly situated for the purposes of the law being challenged but who are being treated differently. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

The question is whether persons convicted of attempted murder are similarly situated to persons convicted of murder. The answer is no. Murder and attempted murder are separate, distinct crimes. An attempt is an offense separate and distinct from the completed crime. (*People v. Marinelli* (2014) 225 Cal.App.4th 1, 5.) It is also true that murder is punished more severely than attempted murder. (§ 190, subd. (a) [murder]; § 664, subd. (a) [attempted murder].) The difference in penal consequences means that persons convicted of murder under the natural and probable consequences doctrine are not similarly situated to persons convicted of attempted murder. Since these two groups are not similarly situated, they may be treated differently by the Legislature.

This could end our analysis. However, it is possible to contend that the classification is not between persons convicted of attempted murder, on the one hand, and murder, on the other, but that the classification is of persons convicted of willful, deliberate, and premeditated attempted murder, on the one hand, and second degree murder, on the other. In this case, there is no disparity in penal consequences. Second degree murder is punishable by 15 years to life (§ 190, subd. (a)), which was the punishment imposed in this case for willful, deliberate, and premeditated attempted murder.

Assuming that there are two groups of similarly situated persons, we must take the second step in the equal protection analysis and ascertain whether the Legislature has a constitutionally sufficient reason to treat the two groups differently (*People v. Chatman, supra,* 4 Cal.5th at p. 288), i.e., accord resentencing to one group and not to the other.

"The extent of justification required to survive equal protection scrutiny in a specific context depends on the nature or effect of the classification at issue. Unequal treatment based on a suspect classification such as race is subject to ' "the most exacting scrutiny." ' (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) So is treatment affecting a fundamental right." (*People v. Chatman, supra*, 4 Cal.5th at p. 288.) In cases involving suspect classifications or fundamental rights, courts subject the classifications to strict scrutiny. Under the strict scrutiny standard, the state bears the burden of establishing not only that it has a compelling interest which justifies the law but that the distinctions drawn by the law are necessary to further its purpose. (*Ibid.*) Where the law challenged neither draws a suspect classification nor burdens fundamental rights, there is "a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose." (*Id.* at pp. 288–289.)

The classification of persons based on their crimes of conviction is not a suspect classification. (Cf. *People v. Wilkinson, supra,* 33 Cal.4th at p. 838.)

While personal liberty is a fundamental right for purposes of equal protection (*People v. Olivas* (1976) 17 Cal.3d 236, 251), as we have had the occasion to observe in *People v. Love, supra,* 55 Cal.App.5th at page 288, rev.gr., *People v. Wilkinson, supra*, 33

13

Cal.4th 821 "clipped *Olivas's* wings."  Specifically, in applying the rational basis standard to the difference between the crimes of battery on a custodial officer in the performance of his or her duties and battery on a custodial officer causing injury,[8] *Wilkinson* held that *Olivas* does not require the courts to subject all criminal classifications to strict scrutiny.  (*Wilkinson, supra,* at p. 838.)  *Wilkinson* went on to hold that a defendant does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.  (*Ibid*.)  The Courts of Appeal anticipated *Wilkinson* on the inapplicability of the strict scrutiny standard of review.  (*People v. Bell* (1996) 45 Cal.App.4th 1030, 1049 [a broad reading of *Olivas* would "intrude[ ] too heavily on the police power and the Legislature's prerogative to set criminal justice policy"]; *People v. Mitchell* (1994) 30 Cal.App.4th 783, 796 ["[d]etermining gradations of culpability . . .  does not implicate the strict scrutiny test for equal protection purposes"]; *People v. Silva* (1994) 27 Cal.App.4th 1160, 1167 [all criminal laws are not subject to strict scrutiny].)

Assuming, but only for the purposes of our discussion, that the "no imputation of malice" rule is extended to attempted murder, the issue is whether limiting resentencing to first and second degree murder, and excluding attempted murder convictions from this benefit, has a rational relationship to a legitimate governmental purpose.

The preservation of the government's financial resources is a legitimate state interest.  (*People v. Chatman, supra*, 4 Cal.5th at p. 290.)  It has been estimated that the cost of SB 1437 in its

---

[8] The latter battery is punishable as either a misdemeanor or a felony, while the former is a felony.

14

current configuration is approximately $7.6 million. (*People v. Lopez, supra*, 38 Cal.App.5th at p. 1112, rev.gr.) It is also true that resentencing is an extraordinary step in the criminal process and not one that is frequently taken. Extending resentencing beyond first and second degree murder would entail additional expense and a greater burden on judicial resources. It is a rational decision to curtail resentencing as an extraordinary remedy for the very serious crime of murder in order to lessen the financial and administrative burden imposed by this reform.

In addition, there is no doubt that, on the whole, attempted murder entails lesser culpability than either first or second degree murder. It is a rational decision to reserve resentencing for convictions that are as burdensome as those for murder, especially when they are compared to convictions of attempted murder that can result in much lesser terms of five, seven, or nine years.

There is a rational relationship between the disparity in treatment and there are legitimate governmental purposes in the limitation of resentencing to first and second degree murder. There is therefore no violation of the equal protection clauses of the federal and California Constitutions.

It follows that even if the "no imputation of malice" rule is extended to attempted murder, the limitation of resentencing to first and second degree murder is a valid exercise of the state's legislative power.

## IV. APPELLANT DID NOT PRESENT A PRIMA FACIE CASE FOR RESENTENCING UNDER SECTION 1170.95

Appellant contends that he presented a prima facie case that he was eligible for resentencing and that, for this reason, the

15

trial court erred in summarily denying his petition and in failing to appoint counsel.  We disagree with all of these propositions.

One decision that has survived our Supreme Court's grants of review that speaks to the issue of a prima facie case for resentencing under section 1170.95 is *People v. Taylor* (2019) 34 Cal.App.5th 543.[9]  *Taylor* provides a working definition of what a prima facie case is for the purposes of section 1170.95:  "Upon receiving a petition that is supported by the petitioner's declaration that all three conditions are met and that makes a 'prima facie showing that the petitioner falls within the provisions of [section 1170.95],' the sentencing court must issue an order to show cause.  (§ 1170.95, subd. (c).)"  (*Taylor, supra,* at p. 562.)  (For the full text of subdivision (c) of section 1170.95, see footnote 10, *post*.)

The sensible rule that emerges from this, and the text of subdivision (c) of section 1170.95, is that if the applicant's declaration shows that all three conditions of subdivision (a) of section 1170.95 have been met, the applicant has made a prima facie case that he or she is eligible for resentencing.  By the same token, if the applicant fails to show that one or more of these conditions has been met, the applicant has not made a prima facie case.

In this case, appellant "checked the box" on the application form that states that he was convicted of first or second degree murder.  However, that is simply not true.

---

[9] Respondent lists six cases on this issue, all of which have been granted review.

Subdivision (c) of section 1170.95 makes two references to a "prima facie case."[10]  The first reference focuses on "eligibility" for relief, while the second addresses "entitlement" to relief. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975.)

As far as making a prima facie case on the issue of entitlement to relief, it has been held that the trial court should assume the facts stated in the 1170.95 petition to be true but the court "need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing." (*People v. Drayton, supra*, 47 Cal.App.5th at p. 980.)  The court went on to hold that the authority to make factual determinations "without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d)[11] is limited to

_____

[10] "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

[11] "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the

17

readily ascertainable facts from the record (such as the crime of conviction), rather than fact finding involving the weighing of evidence or the exercise of discretion." (*Drayton, supra,* at p. 980.) As far as a prima facie case for *eligibility* is concerned, the court in *People v. Drayton* noted with approval the summary denial of the section 1170.95 application by *People v. Flores, supra,* 44 Cal.App.5th 985, on the ground that the applicant in that case was convicted of a crime not listed in section 1170.95, subdivision (a). (*People v. Drayton*, *supra,* 47 Cal.App.5th at p. 976.)

We conclude that when, as here, the applicant cannot show that he or she was convicted of the crimes listed in section 1170.95, subdivision (a), the applicant has not made a prima facie case for *eligibility* for relief.

*People v. Verdugo* (2020) 44 Cal.App.5th 320, 332–333, review granted March 18, 2020, S260493, held that counsel need not be appointed at the initial stage when the court determines whether the applicant is eligible for resentencing. We cite this holding for its persuasive value only. (Cal. Rules of Court, rule 8.1115(e)(1).) We think it is persuasive in that there is no point in appointing counsel when review is limited to readily ascertainable facts from the record such as the crime of conviction. It is also true that the making of a prima facie case for eligibility is very simple, as long as the applicant has been convicted of first or second degree murder.

By way of analogies, the appointment of counsel in Proposition 47 cases appears to be limited to the resentencing stage and is not extended to the eligibility determination.

---

petitioner had not been previously been sentenced." (§ 1170.95, subd. (d)(1).)

(Cf. *People v. Rouse* (2016) 245 Cal.App.4th 292, 301.) Counsel in habeas corpus proceedings is appointed only upon the issuance of an order to show cause (Cal. Rules of Court, rule 4.551(c)(2)), which means that there is no counsel for the initial stages in the evaluation of a petition for a writ of habeas corpus.

We conclude that counsel need not have been appointed before the court denied the application on the ground that appellant was not convicted of first or second degree murder and was therefore not eligible for resentencing.

Finally, the trial court's statement that appellant was the shooter was not necessary for the court's order denying the application. That order was based on the fact that appellant was not eligible for resentencing because he had not been convicted of first or second degree murder. We will disregard the reference to appellant as the shooter because it was surplusage and unnecessary for the trial court's decision. Moreover, we review the court's ruling and not the reason for the ruling and will affirm if the ruling is correct, even if the trial court's reason for the ruling is wrong. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

## V. WE DECLINE TO ADDRESS APPELLANT'S REMAINING CONTENTIONS

The issue before us is a narrow one. It is whether appellant is eligible for resentencing even though he has not been convicted of first or second degree murder. Since the answer to this is in the negative, it is not necessary to proceed any further.

This is not a case where the issue of vicarious liability for attempted murder is raised in the direct appeal from the judgment, as it was in *People v. Medrano, supra,* 42 Cal.App.5th

at p. 1007, rev.gr.[12]  Unlike *Medrano,* the judgment in this case was final when the changes enacted by SB 1437 became effective.

Appellant's contention that his conviction for attempted murder must be set aside because the conviction cannot be based on the natural and probable consequences theory is based on a misunderstanding of the procedural posture of this case.  The issue before us is whether appellant is eligible for resentencing under section 1170.95.  The issue is not whether appellant's final conviction for attempted murder should be set aside in a collateral attack on the judgment based on the "no imputation of malice" rule of SB 1437.  This appeal is not the forum for such a collateral attack.  For the same reason, appellant's contention that he was entitled to a hearing under section 1170.95 because he could have been convicted under the natural and probable consequences theory also ignores that the issue is whether he is eligible for resentencing under section 1170.95, not whether his conviction should be set aside because of the demise of the natural and probable consequences theory of liability.  Appellant may have the makings of a collateral attack on his final judgment, but this appeal is not the vehicle for such an attack.

---

[12] The *Medrano* court concluded that SB 1437 eliminated the natural and probable consequences theory for attempted murder prospectively and retroactively as to nonfinal convictions. (*People v. Medrano, supra*, 42 Cal.App.4th at pp. 1008, 1017–1019, rev.gr.)

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED.**

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.